THE STATE v. EDWARD PURCELL'S EX'OR AND OTHERS.

Where the bond of an officer was required by law to be approved by the County Court, and appeared only to have been approved by the Chief Justice, a question was raised after the expiration of the term of office, whether the sureties were bound.

Where a suit was brought by the State, in 1853, on an official bond, for failure to pay over public money collected in 1840 and 1841, it was held that the claim was barred by the Statute of Limitations, or, from the lapse of time, was presumed to be paid.

Appeal from Brazoria. Tried before the Hon. Nelson H. Munger.

There were pleas of payment and the Statute of Limitations. The case was submitted to the Court below without a jury. The facts appear from the Opinion.

*Attorney General,* for appellant, cited Angell on Lim. Sec. 34 *et seq.*

*J. H. Bell,* for appellees, cited Jones v. Borden, 5 Tex. R. 410.

LIPSCOMB, J. This suit was brought against the executor of Purcell, and the securities of the latter, on his bond as Clerk of the County Court of Brazoria county, to recover an amount of money certified by the State Comptroller to be due and unpaid, from the said Purcell, for money collected by him on licenses, in the years 1840 and 1841. The bond of Purcell and his securities in the same, Mills and Townes, was executed on the 28th day of December, 1838. The amended petition, in which the securities are made parties, was filed December 9th, 1853. The original petition in which Purcell's executor alone was sued, was filed 9th November, 1853. The defendants de-

Vol. XVI.          20

murred, plead payment, the Statute of Limitations, and from the lapse of time since the accrual of the cause of action, that the debt must be presumed to have been paid.

There was no evidence but the bond and the Comptroller's certificate, and the cause was submitted to the Court, without the intervention of a jury, and judgment given and entered up for the defendants, from which the State, by the District Attorney, appealed.

The Attorney General, in support of the appeal, shows by a reference to Art. 241, Hartley's Digest, that the Clerk of the County Court was also, *ex officio*, County Treasurer, and that the collection and paying over money collected by him for licenses, was an official duty, and for the performance of which his securities were liable ; and he relies, in answer to the defence set up, of the Statute of Limitations, and presumption of payment from lapse of time, on what he claims to be a rule of the Common Law, that "no time can run against the State."

In disposing of the question of the liability of the securities on the bond, we must refer to Art. 237 of Hartley's Digest, in which it is provided, among other things, that there shall be elected for each county a Clerk of the County Court ; that before entering upon the duties of his office, he shall enter into bond, with two sureties to be approved *by the Court*, payable to the President and his successors in office, in the penalty of five thousand dollars, *conditioned* for the faithful performance of the duties of the office ; and that he seasonably record all deeds and other instruments of writing required by law to be recorded in his office, and also all judgments, decrees and orders of the said Court, and safely to keep all records, minutes, books, papers, and whatever belongs to his office, which bond shall be recorded in the said Court, and deposited in the office of the Clerk of the District Court, and may be proceeded upon in the same manner as the bond of the Clerk of the District Court. The bond in this case follows the terms of the statute in its structure, but its only authentication is, "Witness, M. B.

Williamson." " Approved, William P. Scott, Chief Justice," without showing that it had been presented to or approved by the Court. The statute, cited before, requires that it should be approved of by the Court. The act for organizing the Court (Art. 230, Hart. Dig.) declares that the County Court shall be composed of one Chief Justice and two Associate Justices, and it requires a majority of the three to compose a Court. This was in force when the bond sued on was executed. It would seem therefore, that the Chief Justice, acting alone as such, did not, and could not constitute the Court, and had no authority to approve the bond of the Clerk of the County Court. If done by the Court, it should have been attested in some way showing that it was so approved in open Court. I should incline to the opinion, that for this defect and failure to comply with the requisitions of the law, the bond was not a good statutory bond, and not valid against the securities, although the principal could be sued for any money collected by him and not paid over to the State Treasury ; but, from the opinion we have arrived at, upon the other defences set up in this case, it is not essential that we should decide on the validity of the bond sued upon.

The maxim that " *nullum tempus occurrit regi* " is acknowledged to be in common use in the English Courts, but that it is a rule of the Common Law, is not so clear ; and it may well be questioned whether it can claim to have had an existence, anterior to the date of the first English Statute of Limitations, and was then only true, so far as it referred to the time fixed by the Statute as a bar to particular actions. We think so, because it is very clear, that in some instances time would, at Common Law, mature and constitute a right against the Crown. Fifty years being the time that would bar a writ of right, that time of the enjoyment of the actual possession of the Crown lands would be conclusive in favor of the right, unless it is shown that the land could not be granted. (See Reed v. Brookman, 6 Eng. Chan. R. 82, 12 Coke, R. 5, and

Parker v. Baldwin, 11 East, 488 ; see, also, Coolidge v. Learned, 8 Pic. R. 508.) We conclude, therefore, that the maxim relied on by the Attorney General, in England amounts to nothing more than that the Statute of Limitations of that country *does not run against the Crown*. We will proceed to enquire whether in civil actions, or, in other words, in actions by the State to recover money, our Statute of Limitations makes the like exception ? It will be admitted, that if any such exception does exist, it is not found in the Statute, but it must be based, for its support, on some supposed rule arising from the relation subsisting between the citizen or subject and his government. Our Statute, in reference to suits brought to re- cover money, uses the term suit without any distinction as to who is to bring the suit, declaring that *no suit shall be brought*, unless it is within the time prescribed by the Act.

It cannot be reasonably inferred, that the exception to the Statute prescribing the time within which personal suits should be brought, was omitted on the assumed hypothesis that a rule of policy would interpose and prevent its running against the State, without the exception being expressed in the Statute, nor that it was accidentally omitted ; because, it will be found, that in the same Act, in fixing the limitation within which real actions shall be brought against persons in possession of land, in each one of those provisions it is expressly provided that such statutory bar shall not run or operate against the State. Why specially except the running of the Statute in real actions and not extend the same exception to personal actions, if it was not intended to operate as a bar to the State in per- sonal actions ? It would be difficult to assign any good reason why, in actions for money, there should be a time fixed by law within which a suit should be brought by a citizen, that would not apply with equal force, when the State was the creditor. The State, from its organization, is as well acquainted with the fact of money being due to its treasury, as an individual could possibly be, and the duty of officers to have suit brought on a

fatlure to pay, is well defined by law. Not so, however, in relation to real actions. From the great extent of the public domain, it would be exceedingly difficult and expensive to provide any government machinery by which it could at all times be known who had settled upon the public lands, or by what pretended deeds such occupancy would be sought to be sustained. This necessity gave rise to the exception as to suits for land, and it will be acknowledged, that so far at least, it was wise to provide that the Statute in these cases should not run against the State.

In the State v. Kroner, (2 Tex. R. 492,) this Court said " the rule is believed to be well settled, that where no exception " has been made by law, the State must prosecute her suits for " civil rights, in the same way and under the same forms of " remedy, prescribed by the laws of the forum, for individual " suitors." If it is admitted that on general principles, a Statute of Limitations, if not expressed to run against the State, will not be construed to include the State ; yet, where the Act in express terms makes the exception in favor of the State, in suits for land, the presumption is that the exception was not intended to extend to other cases. Such is certainly the uniform rule for construing statutes. The State, by its officers, is always in possession of the evidence in support of her claims for money, and her officers always know at what time the indebtedness or cause of action accrued. It is not so with the debtor, and it is more especially not the case with the securities : they do not know what money has been collected by their principal, or how much he has paid over, and would naturally believe that he owed nothing, from the omission, on the part of the State, to commence suit for four or five years ; and consequently would not take the necessary measures to secure themselves from loss on account of the principal's failure. It would, therefore, as to them, operate extremely hard and oppressive ; which would not have happened to them, if the State had used only the diligence required of other suitors, in prosecuting her rights.

We have therefore arrived at the conclusion, that in actions brought by the State, other than those for land, the Statute of Limitations will form a bar to the action.

There is, however, another ground upon which it is very clear that the judgment of the Court below ought to be sustained. It is shown by the record, that the first default of the County Treasurer had occurred about thirteen years, and the second about twelve years, before suit was commenced, and we have shown that lapse of time would raise a presumption, at Common Law, against the Crown, that would bar a recovery for land. A continued possession of the Crown lands for fifty years would bar the Crown, unless it were shown that the land could not have been legally granted ; and this period of time was fixed by analogy to the rule, that the writ of right should be barred by that time. This doctrine was well discussed by counsel, in the case of Lewis v. San Antonio, and elaborately examined by this Court, (7 Tex. R. 288,) and subsequently in the case of DeCordova, Admr. v. Smith's Executrix, (9 Tex. R. 129,) and again at the same Term, same Vol., p. 378, McDonald v. Bell, it was incidentally discussed and recognized by the Court, that a period of time equal to the longest statutory bar in this State, would raise the presumption against the State. The time required to elapse, to raise this presumption against the State, or against an individual right of action, must be determined in each State, by analogy to her own Statute of Limitations. By our Statute, ten years is the time limited, in which a right of entry should be barred ; but we have not decided that a shorter term would not bar under particular circumstances. But we are satisfied that ten years being the longest time, by analogy, it will raise the presumptive bar, even against the State.

                                        Judgment affirmed.


WHEELER, J., did not concur in this case.