## E. H. Willoughby et al. v. G. W. Long.

### No. 1173. Decided January 19, 1903.

**1.—Sale of School Land—Description—Application—Obligation.**

The designation of the tract purchased by one applying to buy school land was not determined by his application alone; there being an excess above the estimated 640 acres in the section, his obligation to the State could also be considered in determining whether the sale was of the entire section as surveyed, or of 640 acres only. (P. 197.)

**2.—Same—Case Stated.**

A survey of school land with field notes calling for 640 acres in a square of 1900 varas on each side, called for corners of older surveys and bearing trees which fixed its boundaries so as to include 960 acres, the excess being in the east and the west lines. An application described the land to be purchased as "the following land in section No. 23," beginning at the southwest corner and following the courses and distances, as in the original survey, but omitting the calls for corners of other surveys and for bearing trees. The obligation executed by the purchaser to the State described the land bought as the "whole of section 23," with the same boundaries by course and distance only. Held, that the contract was for a sale and purchase of the whole section, not merely 640 acres out of it. (P. 197.)

**3.—Sale of School Land—Excess—Right to Purchase.**

Where a section of school land sold in 1882 contained an excess of 320 acres, neither the Act of March 22, 1889, for the ascertainment and sale of excess in such surveys, nor the general law governing the State and its vendee as parties to a contract of sale, warranted the sale of the excess to a new purchaser before it had been ascertained by the Land Commissioner and segregated from the part already sold. (Pp. 198, 199.)

**4.—Same—Contract—Constitution—Authority of Commissioner.**

It would seem that where the whole of a surveyed school land section had been sold prior to the Act of March 22, 1889, though the purchaser might be liable to pay the State for an excess of acreage or submit to partition, that statute, if construed as conferring on the Commissioner a right to determine what part of the survey should be lopped off as excess, and sold to another if not taken by the original purchaser under the six months right of pre-emption granted by the Act, would be an impairment of contract prohibited by the Constitution. (P. 199.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McCulloch County.

Long sued Willoughby and others, claimants under Glenn's purchase, and had a judgment establishing his title. Defendants appealed, and on affirmance of the judgment obtained writ of error.

*F. M. Newman,* for plaintiffs in error.—The court erred in giving the following charge to the jury, to wit: "You are instructed that the evidence in this case shows that plaintiff, G. W. Long, filed with the county clerk of McCulloch County, Texas, on the 16th day of September, 1901, his application to purchase the land described in plaintiff's petition as an actual settler. Now if from the evidence in this case you find that at the time plaintiff filed said application to purchase said land that he had in good faith settled thereon and was then a bona fide settler thereon and that he desired to purchase said land for a home,

then you will find for plaintiff. If you do not so believe you will find for
defendants."

The charge should not have been given, because the land sought to
be purchased by appellee and sued for in this case was sold to W. V.
Glenn in 1881, and the purchase is still in good standing. Acts 17th
Leg., pp. 119-122; Rev. Stats., art. 4274, 4276.

*Shropshire & Hughes,* for defendant in error.—Did Glenn's appli-
cation cover the whole section? In order to arrive at a correct solution
of this question, we must consider first the Acts of 1881, under which
the sale was made, and second, the application as made thereunder by
Glenn. The law constitutes the proposition on the part of the State
and the application by Glenn the acceptance thereof by Glenn, and the
two taken together constitute the contract as made.

Acts of 1881, p. 119, sec. 6, reads as follows: "Any person desiring
to purchase any of the above lands shall make application in writing to
the county or district surveyer, designating  *  *  *  the quantity he
or she wishes to purchase, and if less than a whole section, the particular
part of such section; provided, that no fraction of any section of less
than 160 acres shall be left by any such selection." Under this pro-
vision of the law, Glenn made his application, and therein designated
and selected "the particular part" of the section that he desired,—set-
ting it out by metes and bounds. He also designated the "quantity"
that he desired and gave accurate field notes for that quantity of land
in the survey. Now the law says that if the purchaser wants less he
shall designate the particular portion, quantity, etc. Glenn in his appli-
cation goes to the pains to designate the portion desired with great
minuteness and accuracy. Can the court under such circumstances say
that he did this to cover the whole section, when the law under which
he applied instructs him only to do so when he desires to purchase some
portion thereof less than the whole? Glenn in his application says that
he desires this particular 640 acres in section No. 23, but nowhere says
that he wants all of section No. 23. If Glenn had been applying for
the whole section, and giving its field notes from the field notes of the
original survey, he certainly would have copied the corners and bearings
as called for in the original field notes of the survey, and these corners
and bearings would have controlled distance and carried the lines of his
application to the corners that were then and are now well marked on
the ground, and in that event, his application would have obviously
covered the whole section. But as his application ignores these well
marked corners and bearings on the ground, and he plainly states that
he applies for only 640 acres in the survey, giving a minute description
thereof by metes and bounds, and the law under which this particular
description was so given required him to do so only in event he wanted
to purchase less than the whole survey, we submit that there is no rule
of construction or sound legal reasoning that would authorize the court
to construe this application to cover more than the particular land

covered by the field notes of the application. Cullers v. Platt, 16 S. W. Rep., 1003. This section of the law and the application must be construed together, and both taken together constitute the contract of sale.

Was any action on the part of the Land Commissioner necessary in segregating, setting apart, or "lopping off" this excess in the section before it was subject to be appropriated by the application of G. W. Long? If the application of Glenn had designated the section by its numbers only, as under the Acts of 1881 he should have done if he wanted to purchase the whole section, then the court's construction of the sale would have been correct. The same result or effect would have obtained if the field notes in the application had have called for the corners on the ground, or for surrounding surveys; but this was not done. Glenn's application, we think, has been clearly demonstrated to only cover the south portion of the section and no more than 640 acres that are covered by his field notes. Then, in what condition did the sale of this part to Glenn leave the balance of the section? Was it subject to sale, or not? The whole section had been classified and appraised before the sale to Glenn; and the sale of the south part of it to him did not take the balance of the survey off of the market. If the sale to Glenn had been of the whole survey by numbers, etc., and Glenn's obligation had been only to pay for 640 acres in the survey, under the belief that this was all of the survey, then the case would have come within the purview of the Acts of 1889 (Rev. Stats., arts. 4274, 4275, 4276), and the Land Commissioner would have had to take action in segregating or setting apart the part thereof that was sold from that that was not sold, before it could be sufficiently identified to be separately exposed for sale. The Act of 1889 above referred to was passed to cover just such cases and none other.

GAINES, Chief Justice.—This was a suit to establish title to a part of section 23, surveyed upon a certificate granted to the Galveston & Brazos Navigation Company, which section was a part of the public school lands of the State. The field notes of the original survey purported to contain 640 acres only, and called to run north 1900 varas; Thence east 1900; thence south 1900, and thence west 1900 varas to the beginning; but all corners were fixed by calls for the corners of surrounding surveys, and the first three also by calls for bearing trees. But by a resurvey, made presumably by the Commissioner of the General Land Office under article 4275 of the Revised Statutes, the field notes of which were filed in the General Land Office on June 6, 1892, it was found to contain 960 acres. The error in the original field notes was in the measurement of the east and west lines of the survey, the distance called for, namely, 1900 varas, failing to reach the well defind corners by several hundred varas. It is the excess over 640 acres, which lies on the north end of the survey, that is the subject of controversy in this suit. The defendant in error, who was plaintiff in the trial court, claims by virtue of an application to purchase made September 16, 1901;

the plaintiffs in error, defendants in the court below, claiming under a purchase, as they assert, of the entire section made by one Glenn in 1882.

The first question to be determined is: Did Glenn's purchase include the entire survey, or was it limited to the 640 acres off the south end of the tract? The plaintiffs in error claim that it embraces the whole survey, while on the other hand the defendant in error contends that the south 640 acres only were included in that purchase. That controversy grows out of the language, descriptive of the land, employed in Glenn's application to purchase. The description of the land applied for is as follows: "The following land in section No. 23, block No. ——, in McCulloch County, about 5 miles N. 63 W. from the center of said county surveyed for G. & B. N. Company, Certificate No. 84, beginning at the N. W. corner of survey No. 307 in the name of John Startz; thence north 1900 varas; thence east 1900 varas; thence south 1900 varas; thence west 1900 varas to the place of beginning." If at the time the application was filed the resurvey had been filed and the excess had been disclosed, then this description standing alone would, as we think, have shown that the intention was to apply only for the 640 acres on the south end of the survey. But the resurvey had not then been made, and the applicant had the right to rely and doubtless did rely upon the original field notes as being correct. There being nothing on their face to disclose an error, and since the lines designated in the application embraced the entire survey as shown by the original field notes, it is not apparent to us that it was not intended to include the whole tract. But the application proper is only a part of the transaction. It amounts to nothing unless accompanied by an obligation for the unpaid balance of the purchase money. When the application proper, with the obligation and oath required by law, have been filed and the first installment of purchase money paid, the right of the applicant is fixed and there is a contract with the State. It is a familiar rule, that, in construing contracts, all the papers which evidence the agreement must be read together, in order to arrive at the intention of the parties. In the obligation given by Glenn, the land purchased is described as "whole of section 23, block ——, McCulloch County;" then follows substantially the same description as was given in the application. This shows, we think, that the intention was to purchase the whole survey, and that the sale was a sale of the entire tract. It also appears from the evidence in the case that the language in the application, which creates the sole difficulty in construing it, was that contained in a printed form in the surveyor's office, and that the words "following land in section No. ——" were inserted in the form so that it would meet the case, whether the purchaser desired to buy either the whole or a part of the section.

We therefore conclude that the purchase by Glenn included the whole of the survey.

This brings us to the question, was the defendant in error entitled

by law to purchase the land in controversy as the excess in the survey? On March 22, 1889, the Governor approved an act passed by the Legislature entitled, "An act to provide for the ascertainment, distribution and sale of the excesses in surveys of land made for the school fund and to validate surveys of land as herein provided." That act so far as it bears upon the question before us is as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas: That all surveys and blocks of surveys heretofore made by virtue of valid alternate scrip be and the same are hereby declared to segregate from the mass of the public domain all the land embraced in said surveys, or blocks of surveys, as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys, or by the maps and other records in the General Land Office.

"Sec. 2. That all excess in said surveys or blocks of surveys are hereby donated and declared to belong to the public free school fund of the State; and it shall be the duty of the Commissioner of the General Land Office to ascertain, by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose: Provided, that where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches, and field notes originally returned to the General Land Office: Provided, that the person who has already purchased, or who may hereafter purchase from the State, the particular section to which surplus shall by such resurvey be made contiguous, shall have the prior right for the period of six months after such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy.

"Sec. 3. That all such surveys which, under the direction of the Commissioner of the General Land Office have been or may be hereafter corrected, so that all excess in the original surveys shall be placed in the surveys belonging to the public free schools, are hereby validated, and the action of the Commissioner is hereby ratified; and he is directed and authorized to issue patents to owners thereof, and to sell such surveys belonging to the public free schools, securing to the State the benefit of such excesses."

That it was the purpose of this act to authorize the Commissioner of the General Land Office to cause a resurvey of the lands mentioned in the title, to the end that any excess therein should be ascertained, and to declare such excesses a part of the school fund, is clear. But its provisions otherwise are obscure and difficult of construction. That it contemplated a segregation of the excess in each survey not patented and that such excess should be sold is also evident. But the method by which the segregation is to be accomplished is not provided, unless it is to be implied that the Commissioner was empowered to determine, in his own way, what part should be considered as the excess. That as to

the surveys which were unsold he might have been so authorized, and that his power would continue as to lands sold after the act took effect, we see no good reason to doubt. But that such authority could have been conferred upon him as to lands which had already been sold, is a proposition which, it seems to us, can not be maintained. We have ruled, in effect, that when the State makes a sale of its land its rights and those of its vendee, when neither restricted nor enlarged by statute, are the same as those of vendor and purchaser both of whom are natural persons. Fristoe v. Blum, 92 Texas, 76. In this case the sale was clearly by the acre, and there was a large excess in the survey over the estimated quantity. If the sale had been made by a natural person, the right of the vendor would have been to demand pay for the excess at the stipulated price per acre, and in default of such payment to have the surplus set apart to him by a partition. O'Connell v. Duke, 29 Texas, 299. He might sell his claim and thereby confer upon his assignee the right to sue for payment for the excess, or in the alternative to recover the excess itself by a suit therefor. He can not carve out the surplus, without consent of the vendee, and claim it for himself. Nor can the State do so without impairing its contract, which is not allowed by the Constitution. Whether by the act, which we have quoted in part, the Legislature has attempted to empower the Commissioner of the General Land Office to do this as to lands sold at the time the statute took effect, we need not determine. Nor is it necessary that we should construe the statute with respect to other questions. In this case the Commissioner has neither set apart or attempted to set apart the excess in the survey, and it is quite apparent that the defendant in error had no right to treat the land in controversy as such excess. Since we have concluded that the purchase by Glenn included the entire tract of land embraced in the field notes of the survey, and since the excess has never been legally lopped off from the section, it follows, of necessity, that the defendant in error acquired no right by his application and is not entitled to recover.

For these reasons the judgment of the District Court and that of the Court of Civil Appeals are reversed and judgment is here rendered for the plaintiffs in error.

*Reversed and rendered.*