J. E. ANDERSON v. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE ET AL.

No. 3346.    Decided March 23, 1921, March 15, 1922.

(229 S. W., 459;    238 S. W., 883.)

1.—Public Land—Purchasers—Excess in Survey.

Where a section of public school land surveyed as containing 640 acres was sold in four quarter sections of 160 acres each to four purchasers, and by subsequent survey the section was found to contain 652 acres, the prior right to purchase the excess at the same price per acre, conferred on a

purchaser of the section by article 5397, Revised Statutes, 1911, attached to each purchaser of a quarter thereof as to its proportionate part of the section. (Pp. 404-407).

## ON REHEARING.

**2.—Prior Right to Purchase Excess—Patent.**

The prior right of a purchaser of public land to buy at the same price per acre any excess in the acreage of the tract bought within six months of the time such excess is ascertained by resurvey (Revised Statutes, 1911, article 5397) is limited by article 5400 to purchasers who have not received patents for their land. (P. 408).

**3.—Same—Public Land—Excess in Survey—Permit to Prospect for Minerals.**

Where a purchaser of public land by accepting the State's patent to same has lost the preference right to purchase any excess of acreage in the survey (Revised Statutes, article 5397, 5400) the excess in acreage, which remained the property of the State, was open to applications for permit to prospect for minerals thereon, which would be premature so long as the priority of right to purchase continued. (Pp. 408, 409).

Original application by Anderson to the Supreme Court for writ of mandamus against Robison, as Commissioner of the General Land Office, with whom A. P. Barrett was joined as co-respondent.

*Black & Smedley,* for relator.—It is settled that rights in public land, including rights to mineral permits as well as rights of purchase, can be acquired only by filing applications at a time when the land is subject to filing and with the proper officer. Wagner v. Robison, 109 Texas, 114; Sibley v. Robison, 110 Texas, 1; Landry v. Robison, 110 Texas, 295; Ford v. Brown, 96 Texas, 537; Boswell v. Terrill, 97 Texas, 259; Erp v. Tillman, 103 Texas, 574; Fine v. Robison, 102 Texas, 406; Gracey v. Hendrix, 93 Texas, 26; Hazlewood v. Rogan, 95 Texas, 295, 306.

On motion for rehearing.

As we understand the court's opinion, it is held that the purchaser of each quarter section had the prior right to purchase the excess in the quarter purchased, both under well settled legal principles applicable to the rights of any vendee, and under the provisions of the statute passed in 1889, being Articles 5397 and following of the Revised Statutes.

As far as the statute is concerned, Article 5400, which is a part of the same Act, expressly declares that the provisions of the preceding articles, giving the right to purchase excess, shall have no application to patented lands. It is clear that under the terms of the statute the right of the purchaser of school land to purchase the excess no longer exists if he has applied for and received his patent.

*C. M. Cureton,* Attorney-General, and *E. F. Smith,* Assistant, for respondent Robison.—The application of Art. 5397, Rev. St., 1911, (4275, of 1895) as announced in the Willoughby v. Long and Gale v. Wright cases is not applicable to the facts of this case,—This land being patented. See Art. 5400, R. C. S.

That article gives the owner of a school survey a preference right to buy any excess or surplus that may be cut off of a private survey and added to such school survey. It does not provide for taking excess out of the school surveys.

In the Anderson case no excess or surplus was cut off of a private survey nor was such excess or surplus made contiguous to the school survey. The increased acreage was simply an excess or increase found within the boundary lines of the original field notes when those lines are supposed to be identified on the ground by their original calls. That excess or increased acreage being within and a part of the original section, it could not be a surplus made contiguous thereto, because in this connection "contiguous thereto" means joining or attached thereto on the outside; it could not be both within the section and "without it," too. So there was no preference in anyone to buy, but the owner of the ¼, ½ or whole section would simply have the right to hold or keep what he had already bought or contracted for by paying for it at the original rate, just as would be the rule between two persons where the purchase and sale had been by the acre.

*Nichols, Funderbunk & Strickland,* for respondent Barrett.—

MR. JUSTICE PIERSON delivered the opinion of the court.

Relator brought this action for a writ of mandamus to compel the Commissioner of the General Land Office to issue to him a permit to prospect for and develop petroleum, oil and natural gas upon a 12 acre excess alleged to be in the north part of the S. E. ¼ of Section No. 10, Block 4, Certificate 26/1540, H. & T. C. Railway Company Grantee, in Eastland County, Texas,—and to reject the application for a permit upon said land made by the respondent A. P. Barrett.

Said Section No. 10 was surveyed for the Public School Fund by the H. & T. C. Railway Company by virtue of valid alternate scrip, and was described in the field notes filed in the General Land Office on December 15, 1868, as being 1900 varas square and containing 640 acres of land.

In 1886 the northwest ¼ of said Section was patented by the State of Texas to D. L. Dobbs, containing 160 acres. In 1893 the northeast ¼ of said Section was patented to J. C. Littleton, containing 160 acres. In 1903 the southwest portion of said Section was patented to W. H. Miller, containing 160 acres. In 1898 (before the

date of the last named patent) one J. L. Ruark had applied for and been awarded the "S. E. ½ Section 10, Block 4, Certificate 26/1540, H. & T. C. Ry. Co. Grantee, 160 acres, price per acre $1.50." By mesne conveyances through and under the said J. L. Ruark, the southeast ¼ of said Section 10 was purchased by and conveyed to J. A. Beard, who acquired said land in 1918. In the conveyances from Ruark down to Beard, the land was described as the S. E. ¼ of Section 10, Block 4, etc., containing 160 acres.

On May 6, 1919, respondent A. P. Barrett filed with the County Surveyor of Eastland County his application for a permit upon the excess in the southeast one-quarter of said Section 10. Said surveyor surveyed and made field notes of said excess on May 8, 1919, and same were filed in the General Land Office on May 21, 1919.

On May 22, 1919, the said J. A. Beard filed field notes for 160 acres out of the south-east ¼ of Section 10, Block 4, designating said 160 acres by metes and bounds beginning at the south-east corner of said Section 10, and received a patent therefor,—and at the same time filed a waiver as to excess in the S. E. ¼ of said Section.

The Land Commissioner in his answer, and more fully in his argument, sets out that said Section 10 in fact contained 652 acres of land, instead of 640 acres, and that the entire Section had an excess of 12 acres,—at least as shown by the present state of the records of the Land Office. Relator assumes and treats said excess as being wholly within the S. E. ¼ of said Section 10, but the Commissioner of the General Land Office sets out that said Section contains 652 acres, instead of 640 acres of land, and that it is a mathematical impossibility for the S. E. ¼ or any other ¼ of said Section to contain 172 acres, or the 12 acre excess in addition to the 160 acres belonging to the ¼ section. If it is a question of fact as to whether the 12 acre excess is in the S. E. ¼ or is in the entire Section No. 10, this application would have to be dismissed. But from a full reading of all the pleadings and argument, it appears reasonably clear that the excess belongs to the entire Section No. 10, i. e., that Section No. 10 contains 652 acres of land, and that purchasers of each quarter section have had surveyed and patented to them 160 acres out of each quarter, leaving a 12 acre excess within the Section.

The contention between the parties to this litigation is as to whether or not Barrett's application was premature; inasmuch as relator claims that Beard, who held title from Ruark, had a prior right to purchase the excess in his quarter section, and therefore that respondent Barrett's application was premature, and that the land was not subject to the application in that condition. On the other hand, respondent Barrett contends that the excess in the whole Section No. 10 belonged exclusively to the Public School Fund, and

that Article 5397, giving a "prior right" to a purchaser of a survey to apply for and be awarded the excess in that survey upon paying the original purchase price, does not apply to purchasers having purchased only a part of a survey instead of the whole. If relator Anderson's contention is correct, then it would be clear that the applications of both parties, relator and respondent Barrett, would be premature, and would have to be denied,—for the reason that the purchasers of the other three quarter sections would be entitled to a "prior right" to purchase their respective parts of the excess, after same had been segregated by resurvey as provided by the statute.

Article 5397, R. S. 1911, reads as follows:

"All excess in said surveys are donated and declared to belong to the public free school fund of the state; and it shall be the duty of the commissioner of the general land office to ascertain, by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose; provided, that, where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches and field-notes originally returned to the general land office; provided, that the person who has already purchased, or who may hereafter purchase from the state the particular section to which surplus shall by such resurvey be made contiguous, shall have the prior right for the period of six months after such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy."

The question, therefore, that is determinative of this case is: Do the purchasers, or their successors, of the four quarters of Section 10 have the prior right to purchase the excess from the State? An affirmative finding on this issue would make it unnecessary to answer the other issues raised in the case. The question is not without its difficulties, and is one of some importance in its general application. In the case of Willoughby v. Long, 69 S. W., 646, the Court of Civil Appeals for the Third District held that in order for the above mentioned Article to apply, the person invoking its protection must show that he is the purchaser of the entire section, before he can claim the prior right to purchase the excess. That case was reversed and rendered by this Court, first on the ground that the purchase included the entire survey of 960 acres, notwithstanding the field notes call for only 640 acres; and second, that the vendor had a right to demand pay for the excess at the stipulated price per acre, and could have the excess partitioned and set aside to him *only upon default of such payment.* This Court in numerous cases has held that when the State becomes a party to a contract with

a citizen, the same law applies to it as under like conditions governs the contracts of individuals. State v. Kroner, 2 Texas, 492; State v. Purcell, 16 Texas, 305; State v. Snyder, 66 Texas, 700, 18 S. W., 106; Fristoe v. Blum, 92 Texas, 80, 45 S. W., 998; Jumbo Cattle Co. v. Bacon & Graves, 79 Texas, 5, 14 S. W., 840; Willoughby v. Long, 96 Texas, 199, 71 S. W., 545.

In the case of Willoughby v. Long, 96 Texas, 199, referred to above, Judge Gaines, after holding that the purchase included the whole Section, used the following language.

"In this case the sale was clearly by the acre, and there was a large excess in the survey over the estimated quantity. If the sale had been made by a natural person, the right of the vendor would have been to demand pay for the excess at the stipulated price per acre, and in default of such payment to have the surplus set apart to him by a partition. O'Connell v. Duke, 29 Texas, 300. He might sell his claim and thereby confer upon his assignee the right to sue for payment for the excess, or in the alternative to recover the excess itself by a suit therefor."

Applying these principles to the instant case, it will be seen, in the absence of a statute giving a prior right to the vendee to purchase excess from the State, that under the right of contract, each application having been for a quarter of Section 10, this right would accrue to each purchaser. This is true in this case, unless it was the purpose of Article 5397 to repeal and change that rule. There is nothing in the legislation upon this subject that would justify that construction. It is reasonably clear that in the passage of Article 5397 the Legislature merely gave special application to that well known business rule or principle to the purchases made under its provisions, but fixed a limited time of six months after a resurvey within which the purchasers must exercise their right.

The contracts between the State and the purchasers of School Section No. 10 had already vested in the latter the prior right to its excess, upon payment therefor.

The conclusion is inevitable, therefore, that the purchasers of each of the four quarters of said Section No. 10 had the prior right to their proportionate parts of the excess in said Section, and that said land was not subject to either application,—both applications being premature.

The writ of mandamus is denied.

ON REHEARING.

Mr. JUSTICE PIERSON delivered the opinion of the Court.

Relator, J. E. Anderson, in his motion for rehearing calls our attention to Article 5400 Vernon's Sayles' Texas Civil Statutes 1914, and for the first time calls our attention to the effect to be given to

the fact that patents had been issued to the purchasers of the four quarters of Section 10 prior to his application for a mineral permit.

In his supplemental petition for a writ of mandamus, in narrating the facts of the case, he does make reference to patents having been issued to the purchasers of the quarter sections.

In our original opinion we failed to take into consideration the effect to be given to the issuance of patents to the four quarter sections and to make application of Article 5400 to the facts disclosed in relator's petition.

Application of Article 5400 to the provisions of Article 5397 and to the facts of this case necessitates the granting of the motion for rehearing herein and also the granting of the writ of mandamus prayed for.

Article 5400 is as follows:

"Nothing in the preceding four articles shall apply to any lands for which patents have been issued."

We quote the last proviso of Article 5397:

"Provided, that the person who has already purchased, or who may hereafter purchase from the state the particular section to which surplus shall by such resurvey be made contiguous, shall have the prior right for the period of six months ofter such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy."

We think it was clearly the intention of the Legislature in Article 5400 to fix a time at which this privilege of the prior right to purchase excess should terminate, and it fixed that time at the issuance of the patent to a purchaser under his application and contract of purchase.

Its language is clear and simply provides that the priority accruing to purchasers of lands under Article 5397 shall not apply after patents have been issued to said lands.

The respondent Land Commissioner devotes practically all of his argument in his motion for rehearing upon the proposition that the issuance of a patent precludes the patentee from claiming any land from the State not included in his patent. He states it as follows:

"When the purchaser has had prepared correct field notes, pays for the land and calls for his patent and accepts it, for 160 acres, he cannot, afterwards, obtain any additional land by reason of his application to purchase, being bound by the patent."

As a proposition of law this is correct. Title passes out of the State and vests in the grantee upon the issuance and acceptance of the patent, and is conclusive as to the extent of claim the grantee has *under his contract of purchase,* both as to the limitation of acreage as described in the patent and as to any claim to excess in the survey.

This would be true of claims to the right to purchase excess arising under the obligation of the contract itself, but here, as a gratuity so to speak, by statute the State, through its Legislature, has given this right of priority to the purchaser, independent and aside from his contract, and fixed a limit of time in which this right is to be exercised after the resurvey by the Land Commissioner and the excess is discovered.

The State gives this priority to those who have purchased or who may hereafter purchase, and whose prior rights to purchase are not concluded by the issuance and acceptance of a patent. It is a right given by statute, and inures to the benefit of the purchaser in addition to his contract and is not restricted by its terms.

This prior right to purchase, however, terminates and ceases to exist upon the issuance of the patent as provided in Article 5400. This being true, and the admitted facts being that prior to the filing of relator Anderson's application for a mineral permit, patents had been issued to the purchasers of all four quarter sections and their prior right to purchase the excess being concluded, it follows that relator Anderson was entitled to have issued to him the permit prayed for.

The writ of mandamus is granted.