Frieda WATTS et al.,
Appellants-Appellees,

v.

ALCO OIL & GAS CORPORATION et al., Appellees-Appellants.

No. 6432.

Court of Civil Appeals of Texas, El Paso.

Aug. 4, 1976.

Rehearing Denied Sept. 1, 1976.

</div>

Hart Johnson, Fort Stockton, I. M. Wilford, Houston, John L. Hill, Atty. Gen., J. Milton Richardson, Asst. Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., Austen H. Furse, Asst. Atty. Gen., Austin, for appellants-appellees.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Turpin, Smith & Dyer, Irby L. Dyer, Midland, Walter B. Morgan, Jim K. Wilson, Houston, Joe V. Peacock, Odessa, Alexander R. Gonzalez, Fort Stockton, Roy L. Merrill, Houston, for appellees-appellants.

## OPINION

WARD, Justice.

This is a vacancy case brought pursuant to Article 5421c, Tex.Rev.Civ.Stat.Ann., involving land in Pecos County. The tract contains 309.05 acres of land, is rectangular in shape, and is alleged to be between the East lines of Surveys 3, 5, and 6 of Block OW and the West line of Survey 1, Block 203½, at its Northern end. The tract has its North and South boundary lines 272.1 varas and 224.1 varas in length, respectively, and its East and West boundary lines are some 7,032 varas in length. Trial was before a jury which, in answer to two special issues, determined that certain adjoinder calls made by O. W. Williams referable to the East line of Block OW and to the West line of Survey 1, Block 203½, were not mistaken calls. The trial Court then entered judgment for the defendants, decreeing no vacancy, and with the claimed vacancy being within Survey 1, Block 203½. This result was achieved in the judgment by disregarding the jury finding to Special Issue No. 1, and by accepting the jury finding to Special Issue No. 2, and honoring the call for adjoinder in Williams' corrected field notes of Survey 1, Block 203½, dated July 20, 1887, to the East line of Sections 3, 5, and 6, Block OW. The questions presented on appeal are whether adjoinder calls in the corrected field notes of Survey 1, Block 203½, are to be honored over calls for course and distance, and whether the original field notes of Survey 1, Block 203½, could be cancelled and changed by the corrected field notes of O. W. Williams, dated July 20, 1887. We hold that the adjoinder calls in the corrected field notes of Survey 1, Block 203½, are to be honored over calls for course and distance, that the original field notes of Survey 1, Block 203½, were validly changed and corrected by O. W. Williams, and we affirm the judgment of the trial Court.

Suit was instituted by Ed E. Watts after his vacancy application was denied by the Commissioner of the General Land Office. Frieda Watts was substituted as party plaintiff for Ed E. Watts, who had died. The Attorney General intervened for the State on behalf of the Permanent Free School Fund by a trespass to try title suit for title and possession of the 309.05 acres. The defendants, Marjorie Price Crawford and Mildred Price Simmons, are the owners of the North 1425 acres of Survey 1, Block 203½, and they claim under a 1906 award of Survey 1 to E. Gomez. Survey 1, Block 203½, had been awarded under a "mineral" classification, with the result that the State is the owner of the mineral estate subject to outstanding oil and gas leases, unitization agreements, and the rights of the owners of the soil under the Relinquishment Act. These defendants are known as the Survey 1, Block 203½, defendants. Alco Oil & Gas Corporation, et al., are a separate group of defendants, and hold interest in Surveys 3, 5, and 6, Block OW, which were patented without mineral reservation by the State. They will be referred to herein as the Block OW defendants.

In the Appellate Court, the State of Texas appears both as Appellant and as Appellee, as the judgment decrees no vacancy, but places the 309.05 acre tract within Survey 1, Block 203½. Survey 1, Block 203½, was classified as mineral land by the Com-

missioner of the General Land Office before it was awarded to E. Gomez in 1906. Because of the later Relinquishment Act, the awardee or his assigns became the agent of the State of Texas for the execution of ordinary oil and gas leases. As the land is now under an oil and gas lease as a part of Survey 1, Block 203½, the State is receiving a royalty of ³⁄₃₂nds. The owners of the soil are receiving a like royalty of ³⁄₃₂nds. To protect that interest, the State is Appellee, but a very weak one at best. If the 309.05 acre tract of land is vacant land, and is land which the State of Texas is entitled to recover from the Appellees, subject only to the rights of the Appellant Watts as an applicant under Article 5421c, Sec. 6, and the rights of any possible good faith claimants under said Act, the land would then be subject to sale and for lease under the provisions of Article 5421c, Sec. 6, whereby, since the land is within five miles of a producing oil and gas well, the State of Texas would retain a ⅛th or ⁴⁄₃₂nds free royalty in the mineral estate of the tract. The awardee or his assigns, if a good faith claimant, would acquire ¹³⁄₁₆ths of the mineral estate under the tract, as well as the surface estate, by paying the State for the value of the surface estate only, without taking into consideration the value of the mineral estate, or without taking into consideration the value of improvements upon the land. (Article 5421c, Sec. 6(g)). To gain that advantage, the State is Appellant. If the tract in question is determined to be a part of Sections 3, 5, and 6 of Block OW, the State would have absolutely no interest, as those sections were sold by the State without a reservation of any minerals. To defend from that event, the State is again Appellee, and, obviously, a strong one.

Block OW defendants likewise have doubts as to their ultimate appellate position. The Block OW defendants and the Survey 1, Block 203½, defendants entered a written stipulation of record and approved by the trial Judge that since none of the defendants were asserting claims among themselves, and were jointly asserting that there was no vacancy as claimed by the plaintiff and the intervenor State, that as to these two groups of defendants any answers made by the jury to the two special issues submitted, and any judgment thereafter rendered, would be without prejudice to the claim or title of any defendant as against any other defendant.

Special Issue No. 1 inquired if Surveyor O. W. Williams was mistaken in his calls for adjoinder of Block OW and Survey 1, Block 203½, when he wrote his corrected field notes of Block OW on January 11, 1887. The jury answered he was not mistaken. Special Issue No. 2 inquired if Surveyor O. W. Williams was mistaken in his calls for adjoinder of Survey 1, Block 203½, and Block OW when he wrote his corrected field notes of Survey 1, Block 203½, in July, 1887, and to this issue the jury also answered that he was not mistaken. The trial Court ignored the jury finding on Issue No. 1 on the basis that the matter was settled by the case of *Frost v. Socony Mobil Oil Company*, 433 S.W.2d 387 (Tex.1968). There, it was held that a vacancy did exist between Surveys 49 and 50 located at the Northern end of the tier of Block OW and the senior L. W. Durrell Surveys to the East. It held that calls for course and distance of the junior OW Surveys prevailed over adjoinder calls where Williams', the junior surveyor, corrected field notes were based on office surveys and adjoinder calls were the result of his mistake in locating the West line of the senior survey of L. W. Durrell. Because the same tier of OW Surveys was again involved, the jury finding to Special Issue No. 1 was disregarded, and the East line of Sections 3, 5, and 6, Block OW, was held to distance calls of 1618 varas East of the monumented West line of Williams' East tier of Block OW. That was the same result as was ordered by the *Frost* judgment. While the Block OW defendants are not contesting the position taken by the Survey 1, Block 203½, defendants, the Block OW defendants do attack the District Court judgment in favor of the State as being erroneous. They do this in two ways: first, that the 309.05 acre tract is a part of Block OW which would result in the State having no interest in the miner-

als. While this is contra to the position taken by the Survey 1, Block 203½, defendants, those defendants are protected by the written stipulation made during the trial. Second, since the State sued in trespass to try title and the jury answers were both against the position taken by the State, it had failed to make its case, it had failed to prove title, and judgment should have been entered against the State that it take nothing; that the trial Court was in error in determining the common boundary line in the westerly location, placing the 309.05 acre tract in Survey 1, Block 203½, decreeing to the State title to the mineral estate subject to the rights of the other defendants under the terms of the Relinquishment Act. The prayer of the Block OW defendants is then that the judgment of the trial Court should be affirmed that there is no vacancy, and reversed and rendered to the extent that the State take nothing by its suit.

The case of *Frost v. Socony Mobil Oil Company*, supra, is again referred to as the history of the surveys is therein described beginning at page 388 continuing to the second paragraph at page 396. The description and maps in that opinion are applicable, except that senior Section 242, adjoining Sections 255 and 254 shown particularly on Plats No. 1, No. 2 and No. 3 of the *Frost* opinion, is referred to in the present case and maps as being called Section 542. Of course, the *Frost* case was concerned with the vacancy located some 19 miles North from the first section of the Block OW tier, and was only concerned with whether or not the Williams adjoinder calls going East should be honored. Here, the claimed vacancy adjoins Sections 3, 5, and 6 of the Block OW tier, and the problem is over honoring the adjoinder calls going West in the corrected field notes of Durrell's original field notes for Survey 1, Block 203½.

Survey 1, Block 203½, is a long, narrow, North-South survey lying between Durrell's senior surveys Blocks 106, 115 and 203 to its East and Williams' Block OW to its West. It extends 7.5 miles North and South, and to the North of it Survey 2, Block 203½, extends another 6 miles, occupying the land located between Durrell's senior Blocks 115, 142 and 203 on the East and Williams' Block OW on the West. The area is shown by Appellee's plat attached at this point, with the claimed vacancy shown as the darkened area.

COMPILED FROM

GENERAL LAND OFFICE RECORDS

To supplement the above, and to point out the problems of the present case, when Williams, after July, 1885, had concluded that Survey 1, Block 203½, was not North of, but in conflict with, senior Survey 255, he prepared and filed in the General Land Office corrected field notes for his own surveys in the East tier of Block OW and

for certain of Durrell's work. His first corrections were his corrected field notes, dated November 13 and 15, 1886, respectively, for Durrell's Surveys 2 and 3, Block 203, whereby the conflict by Durrell of his Surveys 2 and 3 with senior Survey 255 was eliminated, as shown by Plats Nos. 2 and 3, page 391, of the *Frost* opinion.

Next, Williams prepared his corrected field notes in January, 1887, for Surveys 1, 2, 3, 5, and 6 in his East tier of Block OW. In the corrected field notes for Survey 1, the original 316 vara call along the North line of Survey 255 was reduced by 282 varas and shown in the corrected field notes as 34 varas. The North line of corrected Survey 1 was given a called distance of 1618 varas, 282 varas less than the original 1900, and each of the significant surveys in the East tier of Block OW, including 3, 5, and 6, was called by the corrected field notes to begin at the Northwest corner of the Survey immediately to the South of it on the monumented line, and called to have a West-East distance of 1618 varas and called for adjoinder with the West line of Durrell's Survey 1, Block 203½. As pointed out in the *Frost* opinion at page 395, the East tier was thus tied to its monumented West line. The negative answer of the jury to Special Issue No. 1 concerned itself with these calls, and was disregarded by the trial Court in accordance with its interpretation of the *Frost* decision.

Williams then made his corrected field notes of Survey 1, Block 203½, dated, July 20, 1887. The descriptive portion of these corrected field notes, with the new adjoinder calls underlined, are as follows:

"BEGINNING at a stk. & md. at S.W. corner of Survey No. 10, Block No. 106, T.S.L. Ry. Co.

THENCE North 6,929.7 varas to S.E. corner Survey No. 2 of this block—

THENCE West 500 varas to a stk. & md. 101.8 varas South of N.E. corner of corrected Survey No. 6, Block OW—

THENCE South 14,517.2 varas to a S.E. corner of Survey No. 1, Block OW in the north line of Survey No. 255—

THENCE S. 86 E. 501 varas to a stake in mound—

THENCE N. 4,577.7 varas to stk. & md.—

THENCE W. 200 varas to S.W. corner Survey No. 4, Block 203—

THENCE N. 3,044.8 varas to N.W. corner said Survey No. 4—

THENCE E. 200 varas to the place of beginning."

At that time, Survey 1, Block 203½, was State owned land. At that time, too, Williams knew that there had been no award of Survey 1, Block 203½, and that all land East of his Block OW and West of the East line of Block 203½ belonged to the State of Texas. These corrected field notes were filed in the General Land Office, and the original field notes of said Survey 1 were marked "cancelled by corrected field notes." These corrected field notes were then the only approved field notes of record for Survey 1. Thereafter, on November 23, 1906, E. Gomez signed his application to purchase Survey 1, 1179½ acres at a price of $1.50 per acre, and signed his obligation to pay for it if his application was approved. On December 15, 1906, the Commissioner of the General Land Office signed the Notice of Award using the same corrected field notes as the description of the land. It is under this award that all Appellees are claiming.

It was the adjoinder calls in these corrected field notes that were in Special Issue No. 2, which inquired if O. W. Williams was mistaken in his call for adjoinder. The jury answer that he was not mistaken became the basis of the judgment which placed the claimed vacancy in Survey 1, Block 203½.

Appellant Frieda Watts has points attacking this finding and the resulting judgment, which in a combined form assert error that the undisputed evidence showed conclusively and as a matter of boundary law that said line should be constructed by and in accordance with the course and distance calls of the corrected field notes, and that the adjoinder calls for Block OW should not be applied. The point, contrary to the order of presentation in the briefs of all parties, will be discussed first because of

its close relation to the facts and the resulting law of the *Frost* case.

The general rules and the general exceptions are settled, and are discussed in both the *Frost* opinion and in the dissent. In summary, calls for adjoinder will ordinarily prevail over calls for distance. Where the adjoinder call is ascertainable, such calls have the same dignity or rank as a call for a natural or artificial object. The call for adjoinder is like a call for a natural or artificial object, and any conflicting call for course, distance or acreage and the like must yield. This is so, even where the call is for adjoinder with the unmarked but ascertainable lines of an adjacent survey. " * * * There is, however, an important exception to the general rule, and petitioners insist that the present case is governed by the exception. When it appears that the call for adjoinder was made through mistake, it may be disregarded and the matter is set at large with the court left free to construct the survey in such manner as will best give effect to the intention of the parties as determined from the entire description when read in the light of the surrounding circumstances. *Stanolind Oil & Gas Co. v. State* [129 Tex. 547, 101 S.W.2d 801], supra; *Turner v. Smith,* 122 Tex. 338, 61 S.W.2d 792; *Boon v. Hunter,* 62 Tex. 582; *State v. Sullivan,* 127 Tex. 525, 92 S.W.2d 228."

See *Frost* case, page 396. Finally, it is recognized in the case that a mistaken or conjectural adjoinder call is not necessarily shown by a mere variance in distance. Justice Walker then considered the variances in distance and the other matters which were before the trial Court in the *Frost* case, which enabled the trial Court to conclude that Williams was mistaken as to the location of the West lines of Blocks 142 and 143 of the Durrell Surveys, and that his calls for adjoinder with such blocks in the corrected field notes of Surveys 49 and 50 were made through mistake. Justice Walker then stated that that result was the only reasonable conclusion that could have been made by the trial Court. Two of the fac-

tors considered in the *Frost* opinion which caused the gap are in evidence in this case: first, the West line of Block 203½ is a substantial distance East of where Williams thought it was when he wrote his corrected field notes for the East tier of Block OW; second, the mechanical errors of the two surveyors in departing from their called courses as they worked Northward.

Two other matters should be noted at this time, as they are similar to the facts developed in the *Frost* case. Williams, in January, 1887, corrected his field notes for the first surveys in his Block OW after he had corrected Durrell's field notes for Survey 3, Block 203, for the purpose of removing its conflict with senior Survey 255. The corrected field notes of Survey 1, Block 203½, dated July 20, 1887, also eliminated the conflict at the South between Durrell's original field notes of this survey and senior Survey 255. At the same time in the correction, Williams reduced the acreage called for in Durrell's work on Survey 1, Block 203½, from 1280 acres to an acreage of 1179.5. Because of the matters noted, the Appellant argues for a reversal.

On the other side of the coin, other factors are present here which were not in the *Frost* case, and which enabled the jury in the present case to conclude that Williams was not mistaken in his calls for adjoinder of Survey 1, Block 203½, with Block OW when he wrote his corrected field notes of Survey 1, Block 203½ in July, 1887. In the first place, the corrected field notes themselves speak overwhelmingly of the intent of the surveyor to accomplish an adjoinder. An adjoinder is called for on all four sides. The original field notes of Survey 1 had called for adjoinder on the East side to Durrell's work, but the corrected field notes added additional adjoinder calls for the surrounding surveys to the North, to the West, and to the South. The declaration of intent on the face of these field notes would have been the same if Williams had concluded his description with the statement that his field notes described all of the land delineated by these surrounding surveys; that Survey 1 was to be bounded by the then existing surveys surrounding it. In the second

place, Williams had been on the ground and had constructed the mounds on the West line of his East tier of OW sections. Williams certainly knew the location of the East line of his Block OW, as that was his own line that he had corrected six months earlier. He knew his East line of his East tier of Block OW was 1618 varas East of his own rock mounds which he had set along the West line of that tier of sections. He knew it was located 34 varas South 86° East from the Northwest corner of Survey 255, and he knew that the Northwest corner of Survey 255 was only 788 varas North 4° East from the stone monuments he set at the lower Southeast corner of Survey 1, Block OW. That this monument was situated on the West line of survey 255 is conceded by the Appellants, though they state that he either set or found this monument. So long as the location of the line being called for is ascertainable, the call for adjoinder to the unmarked line has the same dignity or weight as would a call for a natural or artificial object. *Kirby Lumber Co. v. Gibbs Bros. & Co.,* 14 S.W.2d 1013 (Tex.Com.App. B 1929) jdgmt. adopted; *Maddox v. Turner,* 79 Tex. 279, 15 S.W. 237 (1891); and *Phillips Petroleum Co. v. State,* 63 S.W.2d 737 (Tex.Civ.App.–Austin 1933, writ ref'd).

Because of the connection between this case and the *Frost* case, some of the evidence favorable to the position of the Appellant has been discussed. That aside, the Appellant's point which is presented for determination is that as a matter of law the line should be determined by the course and distance calls of the corrected field notes, and this point requires a finding that the undisputed evidence showed conclusively, and as a matter of law, that Williams was mistaken in his calls for adjoinder with Block OW when he wrote his corrected field notes of Survey 1, Block 203½, in July, 1887. This is a legal sufficiency point, and after having considered only the evidence and inferences tending to support the finding, and disregarding all the evidence and inferences to the contrary which might have been discussed, we find that the evi-

dence is legally sufficient and the point is overruled. *Giles v. Kretzmeier,* 239 S.W.2d 706 (Tex.Civ.App.–Waco 1951, writ ref'd n. r. e.). The evidence was legally sufficient to justify the finding since the mistake in the field notes was not in the call for adjoinder, but in the estimated distance to effect that adjoinder. The trial Court then was correct in its determination that the call for adjoinder prevailed over that for distance. *Gulf Production Co. v. Camp,* Tex.Civ.App., 32 S.W.2d 881, aff'd 122 Tex. 383, 61 S.W.2d 773 (1933).

The Appellant's next complaints, which were consolidated as Point of Error No. 1, were to the effect that the District Court erred in finding and decreeing that the tract of land claimed to be a vacancy was validly included in Survey 1, Block 203½, under the corrected field notes of O. W. Williams for said Survey 1, since that tract had not been included in said Survey 1 by its original field notes. This point is that under Texas Public Land Law, the 309.05 acre tract could not be included in Survey 1, Block 203½, by means of the corrected field notes. Certain additional facts will be noted. Survey 1, Block 203½, was awarded to Gomez under Williams' corrected field notes which called for it to contain 1179.5 acres. Durrell's Survey 1, Block 203½, was for a tract which had been appropriated under the Confederate Certificate for the School Fund. Those original field notes had shown on their face that they were made for the school portion of Confederate Certificate No. 386 issued to S. A. Hopson by the Commissioner of the General Land Office on the 13th day of August, 1881. The Act of April 9, 1881, Chapter CVI, had provided for the grant to permanently disabled Confederate veterans of a land certificate for 1280 acres of land, and had also required that the locator should also locate on the public domain a like amount of land for the benefit of the permanent school fund. Thus, Survey 1 was created. That land was for the benefit of the State school fund and not, on the respective dates of either of the two surveys, for any individual to whom the land was then awarded.

The first award of the land was to E. Gomez in 1906. E. Gomez then conveyed all of Survey 1 to Herman Butz in 1910, who in turn conveyed the South 320 acres to J. A. Poindexter by deed dated December 30, 1913. This deed contained the same metes and bounds description of the tract as in the corrected field notes. Corrected field notes for the South 320 acres of Survey 1 were prepared by A. N. Lee under date December 4, 1911, but appeared to have been filed in the General Land Office January 2, 1914. The A. N. Lee corrected field notes for the South 320 acres go to adjoinder with Block OW. The State approved these field notes and, upon receipt of payment for the 320 acre tract, the General Land Office issued a patent using the same description.

A. N. Lee filed corrected field notes of the remainder of Survey 1, and these show the remaining North part to contain 1425 acres. These field notes are endorsed to show they were filed in the General Land Office August 2, 1929, and are further endorsed "correct on map for 1425 acres." At the same time, A. N. Lee also filed in the General Land Office a copy of his plat, dated July 20, 1929, on which he shows his survey of all of Survey 1 and the adjoining Surveys on all sides. This plat shows that his construction has held the surveys in the East tier of Block OW to their called distance of 1618 varas from their West line, and that he fulfilled O. W. Williams' adjoinder calls in the corrected field notes of Survey 1, Block 203½, by going to adjoinder with Block OW. Lee's plat recites that the North part of Survey 1 contains 1417 acres, but on the filed field notes, the acreage was recalculated and shown as 1425 acres. Lee's plat and field notes show the East-West dimensions for this North part as 692 varas at its South end and 790 varas at its North end, as compared to the questioned calls of 500 varas in Williams' corrected notes. Mr. Draper, testifying for the Appellant Watts, admitted that every acre of the 309.05 acres sought by the Appellant and the State was included within the aforesaid 1929 field notes by A. N. Lee. The 309.05 acres are therefore shown as "surveyed land" in the field notes, maps and records of the General Land Office.

Thereafter, the Price Estate applied for a patent of the South part of the North part of Survey 1, containing 479 acres. The County Surveyor, Jack Silliman, prepared field notes of the 479 acres, and filed a plat showing the acreage. Mr. Silliman testified that his construction followed the work of A. N. Lee as shown on Lee's 1929 plat and has Survey 1 in adjoinder position with Block OW. His survey of the 479 acres was accepted by the State, which accepted payment and patent issued for the 479 acres.

The remaining North 946 acres of the North 1425 acres has not yet been patented, but the purchase price and all interest due thereon since 1906 is being paid for by Appellees, Marjorie Price Crawford and Mildred Price Simmons, under the 1906 award to E. Gomez. In summation, as to Survey 1, the South 320 acres was patented February 10, 1914. The South 479 acres of the North 1425 acres was patented July 3, 1957. The remaining 946 acres of the North 1425 acres is being paid for by the Price Ranch now. Thus, the State is being paid by the Appellees for the land which the Appellant now claims is a vacancy. At least since 1929, the General Land Office has had the detailed information as to the reasons for, and the amount of, the additional acreage in Survey 1.

Since the calls for adjoinder control under Williams' corrected field notes of Survey 1, Block 203½, there was thus present in the 1906 award of Survey 1 to E. Gomez excess acreage over the 1179.5 acres recited in the Survey. The Appellant Watts contends that corrected notes of a survey may not include land which was not included in the original survey, and as applied here, that means that Williams could not by his corrected field notes of July 20, 1887, have included as a part of Survey 1 that land to the West of the West line of that Survey as constructed under the field notes of Durrell. Appellants rely on *Atlantic Refining Company v. Noel,* 443 S.W.2d 35 (Tex. 1968). There, it was stated that: "In any event, a Land Commissioner is not possessed of pow-

er to divest title nor to enlarge titles to lands by the ordering and acceptance of resurveys. It has been the consistent holdings of this court that the acceptance of a resurvey can not authorize the inclusion of lands not included in the original survey." To the same effect, see *Turner v. Smith*, 122 Tex. 338, 61 S.W.2d 792 at 801 (1933); *State v. Post*, 106 Tex. 468 at 500, 169 S.W. 407 at 408 (1914); *Ashby v. Ringstaff*, 464 S.W.2d 891, 893 (Tex.Civ.App.–Austin 1971, writ ref'd n. r. e.).

Those cases have no application to the facts of the present case. Those cases apply where patents had been granted, or where there were valid locations which had been made, all of which had vested legal rights before the resurvey had been made. There, under the meaning used, the survey had marked some right to acquire a title. In the present case, the State owned all of the land involved at the time of the original survey, at the time of the resurvey, and at the time of the filing of the corrected field notes. It was not until some nineteen years later that the land, as redescribed, was sold after full compliance with the then applicable sales act. At that time, in redescribing Survey 1 to include all of the land situated between the surrounding surveys, the State simply described the land to suit its purpose. So long as the State was dealing with its own land and the rights or title of other parties were not involved, it could resurvey it and redescribe it at its pleasure; the Land Commissioner could thereafter sell those lands he was authorized to sell according to the lines of the original survey, the second survey, or a portion of each. Under this situation, the date of survey had no significance. *Allen v. Draper*, 254 S.W. 783, modified 256 S.W. 255 (Tex.Com.App. Section A. 1923).

The Appellant Watts' contention that the State of Texas, before the resurvey, owned the unappropriated public domain, which included the strip in question, that the school fund owned the land which had been appropriated by Durrell by his 1883 original field notes, and that the titles could not be changed by the resurveys is rejected. The State only could complain in the name of the funds involved, and that course it has not chosen to follow. *Theisen v. Stanolind Oil & Gas Co.*, 210 S.W.2d 417 (Tex.Civ. App.–El Paso 1946, writ ref'd n. r. e.). Point of Error No. 1 is overruled.

Any claim that the State might be making that the excess acreage had not been divested from the State is overruled. The State, when the excess was discovered, merely asserted its right to be paid for that acreage. Those demands have been met, and the sale stands as originally made. *Willoughby v. Long*, 96 Tex. 194, 71 S.W. 545 (1903); *Foster v. Duval County Ranch Co.*, 260 S.W.2d 103 (Tex.Civ.App.–San Antonio 1953, writ ref'd n. r. e.).

Having held that the 309.05 acre tract is a part of Survey 1, Block 203½, the points urged by the Block OW defendants that the acreage is within the Block OW Surveys are all overruled. As to the points of the Block OW defendants urging that a take nothing judgment should have been rendered against the State in its trespass to try title suit, all of those points are also overruled. The evidence was undisputed that Survey 1, Block 203½, was classified as mineral land by the Commissioner of the General Land Office before the award to E. Gomez in 1906. The interests of the State were proven by the evidence and were correctly protected by the judgment of the trial Court.

All points of all parties appearing as Appellants have been considered, and they are all overruled. The judgment of the trial Court is affirmed.

OSBORN, J., not sitting.