FRED TURNER, JR., V. MRS. M. A. SMITH ET AL.

No. 5395. Decided May 13, 1933.
(61 S. W., 2d Series, 792.)

340

*Cantey, Hanger & McMahon, Mark McMahon, Gillis A. Johnson,* all of Ft. Worth, *C. B. Collard,* of Odessa, *C. W. Trueheart,* of San Antonio, *W. A. Keeling,* of Austin, for plaintiff in error.

If it were impossible to reasonably so interpret the Yates patent as to prevent the disregard of the calls for adjoinder for the east line of Block 194, the court must reject the call for such east line on account of affirmatively shown mistake.

This is the only alternative left under the decision in Giraud v. Wilson, 111 Texas, 253, 231 S. W., 1074.

That it is not true is established by all of the following cases, where in office surveys, calls for adjoinder appearing to have been made under mistake as to the location of the senior lines, calls for course and distance were held to prevail. New York and Texas Land Company v. Thomson, 83 Texas, 169; Texas & P. Ry. Co. v. Thomson, 65 Texas, 186, 192; Boon v. Hunter, 62 Texas, 582; Booth v. Upshur, 26 Texas, 64, 69 and 73; Sanborn v. Gunter & Munson, 84 Texas, 273; Huff v. Crawford, 89 Texas, 214; Sellman v. Sellman (Civ. App.), 73 S. W., 48; Finlay v. State, 238 S. W., 956, 966 and 971.

Calls for adjoinder in office field notes are no more conclusive than they are in field notes of surveys made upon the ground. The doctrine of forced adjoinder as illustrated by the cases of Cross v. Wilkinson, 111 Texas, 311, 234 S. W., 68, and Stewart v. Coleman County, 95 Texas, 445, is and can have no application to public school land, and under the terms of those decisions is based upon the Act of 1883, which makes a special and peculiar rule of boundary with respect to County School Lands only. The Legislature has never undertaken to alter

the ordinary rules of boundary with respect to anything else than county school lands, and these decisions (so confidently relied upon by Mr. Pannill) are restricted in their effect to county school lands under the very terms of the opinions therein as based upon this special statute.

No abstract intention on the part of Yates in his letter of inquiry to appropriate all of the land lying between the west line of the river surveys and the true east line of block 194 could be effective to create an equitable title in Yates to the area in controversy, being beyond the Yates west line as fixed by its field notes and between that and the true east line of block 194; and after Yates accepted a patent upon Dod's field notes he conclusively abandoned any land within the scope of his letter of inquiry but beyond the scope of his field notes. Anderson v. Robison, 111 Texas, 402, 238 S. W., 893.

The calls and field notes in office surveys may be reversed just as much as though they were surveys made upon the ground as long as those lines which were not run are not made to control those lines which were run. McAninch v. Freeman, 69 Texas, 445; Swenson v. Willsford, 84 Texas, 424; Maddox v. Fenner, 79 Texas, 279; Herman v. McIver, 140 S. W., 798.

The application is merged in the survey and the (application to survey) in so far as it goes beyond the (application to purchase), does not constitute even an equitable appropriation of the land. They confuse the application for survey with the real contract with the State. New York & Texas Land Co. v. Thompson, 83 Texas, 169; Forbes v. Withers, 71 Texas, 302; Robles v. Cooksey, 70 S. W., 584.

The position fixed for the east line of Block 194 (while erroneous in law) established in 1919 by these same parties and Dod is a physical fact in the subsequent location of the junior Yates Survey, although the resurvey be considered void. Kirby Lumber Co. v. Gibbs, 14 S. W. (2d) 1013; Boon v. Hunter, 62 Texas, 582; Huff v. Crawford, 89 Texas, 214; and Lester v. Hays, 14 Texas Civ. App., 643, 38 S. W., 52.

This east line, whether actually surveyed or projected from the actual survey of the same surveyor between fixed monuments on the ground, is of certain and definite position and constituted a marked line in law when the Yates Survey was thereafter made. Braumiller v. Burke, 112 Texas, 387, 247 S. W., 501; Steusoff v. Jackson, 40 Texas Civ. App., 328, 89 S. W., 445; Maddox v. Fenner, 79 Texas, 279; and Matador Land & Cattle Co. v. Cassidy S. W. Com. Co., 207 S. W., 430.

The Dod reports and sketch reflecting how and where this

line was established by him and fixed by these monuments are both admissible and controlling; and Dod's 2nd sketch is incorporated in the Yates field notes by reference and his previous surveys "adopted" along with the "general plat" as the field note plat of the Yates Survey. Gilbert v. Finberg, 156 S. W., 507; Booth v. Upshur, 26 Texas, 64; Denton v. English, 171 S. W., 248; and Gerald v. Freeman, 68 Texas, 201.

Since the field notes of the junior Yates Survey, when applied to the ground established from its well marked east line, containing its beginning corner according to its course, distance and acreage calls, develop that its west line does not reach the true unmarked east line of Block 194, but exactly reaches and adjoins the position on the ground previously fixed by these same parties for that east line, as previously seen, then:

(a)  The calls for adjoinder in the Yates west line will be construed to adjoin the position of the east line of Block 194 actually fixed by Dod, as previously stated, or

(b)  The calls for adjoinder, if regarded as being for the true unmarked east line of the senior block, will be rejected because inserted by mistake of the surveyor as to such true position. Giraud v. Wilson, 111 Texas, 253, 231 S. W., 1074; Porter v. State, 15 S. W. (2d) 191; Boon v. Hunter, 62 Texas, 582; N. Y. & T. Land Co. v. Thomson, 83 Texas, 169; Lomax v. Rowe, 3 S. W. (2d) 498; State v. Talkington, 274 S. W., 314; Garcia v. State, 274 S. W., 319; Hamilton v. State, 152 S. W., 1117; Prairie Oil & Gas Co. v. State, 229 S. W., 585; Stein v. Roberts, 217 S. W., 166; Benevides v. State, 214 S. W., 568; Texas & P. Ry. Co. v. Thompson, 65 Texas, 186; Layton v. Land Co., 29 S. W., 1120; and Aransas Pass Col. Co. v. Flippen, 29 S. W., 813.

Dod's second sketch filed in the Land Office November 18, 1919, was the most recently completed plat and map of this specific area both on file and in use when the Yates Survey was made in 1920, and its west line must be located according to the then assumed correct position of the east line of Block 194 as reflected by that plat without regard to its true position. Huff v. Crawford, 89 Texas, 214; Boon v. Hunter, 62 Texas, 582; N. Y. & T. Land Co. v. Thomson, 83 Texas, 169; Texas & P. R. Co. v. Thompson, 65 Texas, 186, 192 Gilbert v. Finberg, 156 S. W., 507; Cox v. Finks, 41 S. W., 95; and Sanborn v. Gunter & Munson, 84 Texas, 273.

Yates letter of inquiry of May 1, 1920, was the letter upon which action was taken in the making of the I. G. Yates Survey and must be read in the light of what had been previously

done by these same parties and this same surveyor, and when so read describes and refers to the 2486 acres located east of the east line of Block 194 as previously marked by them and does not include this 560 acres in controversy. Giraud v. Wilson, 111 Texas, 253, 231 S. W., 1074; Boon v. Hunter, 62 Texas, 582; and Gilbert v. Finberg, 156 S. W., 507.

No contract existed between Yates and the State until June, 1921, when Yates filed the application and obligation to purchase the Yates Survey of 2486 acres in accordance with S. F. 12341; and it was then considered by both parties to be definitely limited to the area east of this 560 acres in dispute. Willoughby v. Long, 96 Texas, 194; Telfener v. Russ, 162 U. S., 172; Forbes v. Withers, 71 Texas, 302; and Anderson v. Robison, 111 Texas, 402, 238 S. W., 883.

The Yates Survey is limited by its patent to 2486 acres and the survey as made included just this, and cannot be enlarged by any letter of inquiry, even assuming that the letter had described a larger area. Anderson v. Robison, 111 Texas, 402, 238 S. W., 883; Garcia v. State, 274 S. W., 319; Hamilton v. State, 152 S. W., 1117; Forbes v. Withers, 71 Texas, 302; N. Y. & T. Land Co. v. Thomson, 83 Texas, 169; Robles v. Cooksey, 70 S. W., 584; Adams v. Houston & T. C. Ry. Co., 70 Texas, 252; Montgomery Co. v. Angier, 74 S. W., 957 (error refused); Kennedy Pasture Co. v. State, 111 Texas, 200, 196 S. W., 287; Jones v. Petty, 146 S. W., 663; Lubbock v. Binns, 50 S. W., 584 (error refused); and Miller v. Yates, 15 S. W. (2d) 730.

The lands granted by the State to Yates and as described in the patent are determined by the survey as actually made and not by how it should or might have been made. Forbes v. Withers, 71 Texas, 302; N. Y. & T. Land Co. v. Thomson, 83 Texas, 169; Robles v. Cooksey, 70 S. W., 584; and Adams v. Houston & T. C. Ry. Co., 70 Texas, 252.

This disputed area of 560 acres not having been included in the I. G. Yates Survey as made and patented cannot be regarded as excess, but if regarded as originally excess, Yates has no right to receive it now because (a) he has received and accepted patent upon an area not included in it, and (b) the rights of Turner have intervened, and (c) he did not apply to purchase it within six months in any event. Anderson v. Robison, 111 Texas, 402, 238 S. W., 883; Garcia v. State, 274 S. W., 319; N. Y. & T. Land Co. v. Thomson, 83 Texas, 169; Acts of 1889, Arts. 5397-5400 (1920); and Art. 5323 (1925), R. S.

The second or Yates method of construction of Block 194

is based solely and entirely upon the verity of a supposed monument claimed to have been identified as SE 7, Block C-3. If it is at all uncertain in identity or even if it is less certain than some other corner in Block C-3 that would bring a different result, we are not justified in spreading Block C-3 east and west so as to insert 68 varas to the mile excess in the east-west calls of the surveys in Block 194.

Block 194 (G. C. & S. F. Ry. Company) under the law of boundary is correctly located by putting its surveys consecutively in one system according to their interconnecting field note calls for course and distance, beginning with survey 1 of that block at the fixed and certain position of the northeast corner and the east line of Block Z as established by the undisputed Perry Hill and Canyon Corners, thence from west to east. Brooks v. Slaughter, 218 S. W., 632, 634, and 232 S. W., 856; Matador v. Cassidy-Southwestern Commission Co., 207 S. W., 430; Upshur v. Lewright, 101 S. W., 1013; Hamman v. San Jacinto Rice Co., 229 S. W., 1008, 1014; Petty v. Paggi Bros. Oil Co., 254 S. W. (Comm.) 565; Polk County v. Stevens, 143 S. W., 204, 207.

*Gibbs & Lewis, J. W. Hill, Smith & Neill, Harris, Harris & Sedberry, and James Cornell,* all of San Angelo, *Frank D. Stubbeman,* of Midland, *A. M. Gee,* of Edmond, Okla., *W. L. Harris, Dean & Perkins, Hiner & Pannill, J. C. Adams, Henry O. Gossett, Burney Braly,* all of Fort Worth, *Turney, Burgess, Culwell & Pollard,* of El Paso, *A. D. Dyess, L. L. Mott, Rex G. Baker, Ike S. Handy,* of Houston, *R. R. Priest,* of Rankin, *Belcher & Montague* and *Brian Montague,* of Del Rio, *Leahy, Maxey, MacDonald & Holden,* of Tulsa, Okla., *Thompson, Mitchell, Thompson & Young,* all of St. Louis, Mo., *Black & Graves,* of Austin, *Ross C. Gwilliam,* of Tulsa, Okla., *Bland Proctor,* of Victoria, *L. B. Woodson,* of Chicago, for defendants in error.

Where the calls for course and distance in a survey are in conflict with the calls for adjoinder with lines or corners of contiguous surveys, the calls for adjoinder will control over the calls for course and distance. Clement v. Packer, 125 U. S., 327; Standefer v. Vaughn, 219 S. W., 484.

Where a block of surveys is laid out as one block and it is found subsequently that there is an excess of land contained within the entire block, such excess should be prorated among all of the surveys in the block so that each survey will receive its just and equal proportion of the excess. Welder v. Carroll,

29 Texas, 318; Sellers v. Reed, 46 Texas, 377; Ware v. Mc-Quinn, 7 Texas Civ. App., 107, 26 S. W., 126; Ruling Case Law, Vol. 4, p. 115, under the heading Boundaries, Sec. 53; Knippa v. Umlang (Texas Civ. App.), 27 S. W., 915; Osten v. Esquela Land, etc. Co. (Texas Civ. App.), 107 S. W., 1138; Johnson v. Knippa (Texas Civ. App.), 127 S. W., 905; Boon v. Hunter 62 Texas, 582; Freeman v. Mahoney, 57 Texas, 624, 626; Isaacs v. Texas Ld. & C. Co., 99 S. W., 1040; Booth v. Clark, 59 Washington, 229, 109 Pac., 805.

Where a survey is made for the purpose of including in it all the vacant land surrounded by older surveys and the line of an adjacent survey is called for by an office call as constituting the outer boundary of such survey, the boundary of such survey must be determined by the calls for the prior adjacent grants, disregarding both course and distance if necessary, so as to embrace within the lines of the patent all the land lying between the adjacent grants and called for as constituting its outer boundaries. Woods v. Robinson, 58 Texas, 655; Ruth v. Carter-Kelly Lumber Co., 286 S. W., 322; Davis v. Baylor (Sup.), 19 S. W., 523; Moore v. Reiley, 68 Texas, 668, 5 S. W., 618; Jones v. Burgett, 46 Texas, 285; Duren v. Presberry, 25 Texas, 513; Isaacs v. Texas Land & Cattle Co., 99 S. W., 1040; Steusoff v. Jackson, 40 Texas Civ. App., 328, 89 S. W., 445; State v. Palacios, 150 S. W., 229.

Land claimed to be a part of the unsurveyed public land but which appears on the record of the Land Office to have been included in prior grants and is adversely claimed and occupied is not subject to sale until after suit by the State and judicial ascertainment that such land is public land. Authorities cited above and State v. Bradford, 25 S. W. (2d) 706.

Where the field notes of the survey fixes its boundaries by calls for adjoining surveys, such field notes upon their face include all the land up to the adjoining lines called for. Goldman v. Hadley, 122 S. W., 282; Cross v. Wilkinson, 111 Texas, 311, 234 S. W., 68; Waggoner v. Daniels, 18 Texas Civ. App., 235, 44 S. W., 946; Steusoff v. Jackson, 89 S. W., 445; Isaacs v. Texas Land & Cattle Co., 99 S. W., 1040; Kirby Lumber Co. v. Gibbs, 14 S. W. (2d) 1013.

Durrell intended to appropriate land adjoining Block "Z" and construct his sections in Block 194 contiguous to Block "Z" so that they would fall upon the respective corners and adjacent sections in Block "Z," and thus give to sections in Block 194 the same excess north and south as found in Block "Z," although there are no corners on the ground in any sec-

tion in Block "Z," which is adjacent to Block 194 and in order to determine the location of the sections on the east line of Block "Z," it is necessary to survey a line from the southeast corner of Block "Z," which is the southeast corner of section 2, of said Block, and the northeast corner of section 5 and the northwest corner of section 3, Block C-4, and which southeast corner of Block "Z" does not touch Block 194 but is also the southeast corner of Survey 25, Block 178. Durrell also intended to appropriate to Block 194, the area adjoining Block 178, and to make the corners of Sections 13, 14, 15, 16, 18, 19, and 20, in Block 194 to fall upon the corresponding Sections 26, 27, 28, 29, 31, 32, and 33, Block 178, and thereby give to the said sections in Block 194 the same excess east and west as excess in Block 178. Boon v. Hunter, 62 Texas, 582; Huff v. Crawford, 89 Texas, 214; Brooks v. Slaughter, 232 S. W., 856; Standefer v. Vaughn, 219 S. W., 484; Hammann v. San Jacinto Rice Co., 229 S. W., 1008; Welder v. Carroll, 29 Texas, 317; Clement v. Packer, 125 U. S., 309, 8 Sup. Ct. Rep., 907, 31 L. Ed., 721.

Where land appears to be vacant on the records of the Land Office as was the case when Mr. Yates filed his application by letter of inquiry, and such application is granted by the appointment of a surveyor, a right is thus created in the applicant and a contract is negotiated for the purchase of the vacant area described in the application. Cox v. Robison, 103 Texas, 354; Landry v. Robison, 110 Texas, 295; Stallcup v. Robison, 117 Texas, 189.

The intention to be ascertained is not an undisclosed intention which existed in the mind of the surveyor, but that which appears from the face of the grant, viewed in the light of the surrounding facts and circumstances. Boon v. Hunter, 62 Texas, 582; Huff v. Crawford, 89 Texas, 214; Stafford v. King, 30 Texas, 271.

Where a grant evidenced by award and patent includes within its bounds acreage in excess of the amount stated in such award and patent, such excess acreage is "Titled Land" and is not subject to appropriation as a vacancy.. Davis v. Baylor (Sup.), 19 S. W., 523; Bartlett Land & Lumber Co. v. Saunders, 103 U. S., 316, 26 L. Ed., 546; Fristoe v. L. & H. Blum, 92 Texas, 76, 45 S. W., 998; Willoughby v. Long, 96 Texas, 194, 71 S. W., 545.

*Claud Pollard*, former Attorney General, *Robert Lee Bobbitt*, former Attorney General, *James V. Allred*, Attorney General, and *Geo. T. Wilson*, Assistant Attorney General, as amicus curiae.

MR. JUSTICE PIERSON delivered the opinion of the court.

For a partial statement of the case we use the following from the opinion of the Honorable Court of Civil Appeals. 13 S. W. (2d) 154, 155:

"This suit was brought by appellee, Turner, in the District Court of Pecos County, against A. L. Lea, county surveyor of said county. The action was brought under article 5323, R. S., for mandamus, to compel the surveyor to make a survey as required by said article of certain parcels of land, hereinafter particularly described, in Pecos County, alleged to be unsurveyed public free school land, which the petitioner desired to purchase. It was alleged that plaintiff previously had made written application of inquiry to the Commissioner of the General Land Office and the Commissioner refused to recognize the existence of a vacancy and give the name of an authorized surveyor to make the survey. All of the conditions precedent to the right to bring the suit are by the petition and evidence shown to have been met. The surveyor answered, averring a willingness to make the survey if ordered so to do, and impleaded numerous adverse claimants of the land in question. Among those so impleaded are Mrs. M. A. Smith and I. G. Yates. These last-named parties and those claiming under them will be hereinafter, respectively, referred to as the Smith interests and the Yates interests.

"In response to a peremptory instruction given upon the close of the evidence, verdict was returned finding the land described in the petition to be 'vacant, unsurveyed land belonging to the Public Free School Fund of the State of Texas.' Thereupon judgment was rendered that all of the lands and areas described in the petition 'are and the same are hereby adjudged to be vacant, unsurveyed public land belonging to the Public Free School Fund of the State of Texas, towit: (Here follows description of the land) and that such vacant public land above described is not included in or appropriated by either the Ira G. Yates Survey of Pecos County, Texas, or in any of the surveys in either Block 194, G. C. & S. F. Ry. Co. Surveys of Pecos County, Texas, or Block 178, T. C. R. R. Co. Surveys, Pecos County, Texas, or in any other survey; and that the said claimants and each of them impleaded herein are without any right, title, or interest in and to said area or any part thereof.'

"The judgment then proceeded to order the surveyor to forthwith make the survey and within 90 days do the other things required by the second section of the act, and the writ

of mandamus against the surveyor was ordered issued as prayed for."

On appeal the Honorable Court of Civil Appeals at El Paso reversed this judgment and rendered judgment "decreeing the land described in the plaintiff's petition is not vacant, unsurveyed public land belonging to the public free school fund of the State of Texas" upon its holding that said land is included in the I. G. Yates patent to Survey S. F. 12341, Pecos County.

For extensive and elaborate statement of the pleadings and facts in the case and the theories of the different claimants see Judge Higgins' opinion, 13 S. W. (2d) 152.

In the Supreme Court this case was submitted and argued with two other important cases, to wit: No. 6339, Douglas Oil Co. et al. v. The State of Texas (called the California case) post 377, and No. 6338, Douglas Oil Co. et al. v. The State of Texas (called the Whiteside case), post 369, which are before us on certified questions from the Honorable Court of Civil Appeals at Austin. These cases are being considered together and a decision of each will be controlled by our holdings herein. The determination of these cases depends upon the legal method of locating on the ground Block 194, G. C. & S. F. Ry. Company, in Pecos County, as surveyed by L. W. Durrell (an office survey) in 1883.

In this case the State of Texas through its Attorney General filed a plea of intervention in the District Court in which it prayed that "the court shall decree that the area described in plaintiff's first amended original petition to be vacant public free school land * * * and that this Court shall enter its judgment and decree and issue writ of mandamus directing the said defendant, A. N. Lea, as County Surveyor of Pecos County, Texas, to make survey of said area." On motion of the defendants in the trial court this plea of intervention in behalf of the State of Texas was stricken from the record. On the authority of the State to intervene in such cases see Van Camp et al. v. Gulf Production Company et al., this day decided, post. _____.

Petitioner Fred Turner, Jr., described the vacancy he sought to have surveyed as follows:

"Being all of that unsurveyed land and area situated in Pecos County, Texas, about 57 miles east from Fort Stockton, the County seat of Pecos County, Texas, and about three miles west of the Pecos River, lying and being situated between the eastern boundaries of Surveys 33, 32, 31 and 30, Block 194, G. C. & S. F. Ry. Co. Surveys of Pecos County, Texas, and a portion of the eastern boundary of Survey 1, Block 178, T. C. R.

R. Co. surveys of Pecos County, Texas, on the west; and the western boundaries of the Ira G. Yates survey of Pecos County, Texas, and a portion of the western boundary of survey 61, Block 1, I. & G. N. R. R. Co. Surveys of Pecos County, Texas, on the east; the north end of which unsurveyed area is the most northerly south line of survey 33, said Block 194, and a projection thereof toward the east to an intersection with the west boundary of said Survey 61, Block 1, I. & G. N. R. R. Co. surveys in Pecos County, Texas; and the south end of which is the projection in an easterly direction of the north line of survey 35, Block 178, T. C. R. R. Co. surveys, from the intersection of such projected line with the east boundary of Survey 1 in said last named block to its intersection with the western boundary of the Ira G. Yates Survey of Pecos County, Texas, at a point due east of the northeast corner of said survey 35 in said Block 178; and containing approximately 560 acres of land, more or less."

A decision of the question whether the alleged vacancy in fact exists depends upon the proper construction of the surrounding surveys. The various surveys in this vicinity were put in in the following manner and at the times stated:

Block 12, H. & G. N. Ry. Co. was surveyed on the ground in 1873 by William Nelson. The location of this survey is not disputed.

Block 1, I. & G. N. R. R. Co. was surveyed on the ground in 1876 by Jacob Kuechler, who marked a number of corners along the Pecos River. Later, in 1920 and 1921, R. S. Dod ran out the west line of this block and placed certain monuments on the ground along said west line. The location of this block is not disputed by any of the parties to this suit.

Block A-2, T. C. Ry. Co., was surveyed on the ground in May, 1881, by H. C. Barton.

Block C-3, E. L. & R. R. R. R. Co., was surveyed on the ground in June, 1881, by H. C. Barton.

Block C-4, G. C. & S. F. Ry. Co., was surveyed on the ground in October, 1881, by H. C. Barton.

Block Z, T. C. Ry. Co., was surveyed on the ground in 1882 by G. Schadowsky, who adopted the northwest corner of section 3 in Block C-4, known as Perry Hill Corner, for the southeast corner of section 2 in Block Z, being also the southeast corner of said block. Schadowsky also established and marked with a large stone mound with markings the northeast corner of section 33 in block Z, which is identified as the orig-

inal corner and which is known as Canyon corner in the north line of Block Z.

L. W. Durrell in 1881 put in Runnels County School Land Block No. 3 as an office survey by protraction from Block 1, I. & G. N. R. R. Co. survey. In 1882 Durrell made an office resurvey of this Block. This Block was later located on the ground by R. S. Dod, and its true position is not now in dispute.

In November, 1882, L. W. Durrell put in Block 178, T. C. Ry. Co. as an office survey. The field notes of sections 1, 2 and 3 of Block 178 call to adjoin certain of the River sections in Block 1, I. & G. N. R. R. Co. Survey. The remaining sections in Block 178 call for 1900 varas each way and are built in consecutive numbers from east to west off of sections 1, 2 and 3. The field notes covering the southernmost sections of this block call to adjoin the unmarked north line of Block C-3, and sections 22, 23, 24 and 25 of Block 178 call to adjoin sections in Block C-4. The southwest corner of survey 25, Block 178, by its field notes calls to adjoin the northwest corner of survey 3, Block C-4, which latter is established on the ground as Perry Hill Corner, and is also the southeast corner of Block Z. Block 178 was located by virtue of the application of Powell and Gage dated September 23, 1882, and the survey and record of the field notes were complete before Block 194 was put in.

Block 194, G. C. & S. F. Ry. Co., was located by virtue of the application of J. S. Daugherty, dated October 5, 1882. This block was put in by L. W. Durrell in May, 1883, as an office survey. The field notes of survey 1, the initial survey of this block, call to begin at a stake and mound at the northeast corner of survey No. 15, Block Z, which is the northeast corner of Block Z, running thence south 1900 varas to a stake and mound at the southeast corner of said survey No. 15, Block Z, for the southwest corner of this survey; thence east 1900 varas to a stake and mound for the southeast corner of this survey; thence north 1900 varas to a rock mound for the northeast corner of this survey; thence west 1900 varas to the place of beginning. Upon this survey No. 1, Block 194, the surveyor Durrell constructed the remainder of Block 194, calling for 1900 varas each way for surveys 1 to 28 inclusive. It is to be noted that Block 194 was platted in from west to east, instead of from east to west as in the case of Block 178. The field notes for the western tier of sections, immediately below Survey No. 1, call to adjoin the corners and east lines of the various sections along the east line of Block Z. In the southern tier of surveys in this Block the calls are to adjoin the unmarked and unsurveyed

north line of Block 178. Surveys 30 to 34 inclusive, constituting the eastern tier of surveys in Block 194, in their field notes as originally drafted, called for adjoinders with the unmarked west lines and corners of Block 1, I. & G. N. R. R. Co. The field notes for sections 34 to 40 inclusive, as originally drafted, called for the Runnels County School Land Survey No. 3. The remainder of the sections in Block 194 are plotted in to the north and west of Block Z and call for 1900 varas each way.

The original field notes as returned by L. W. Durrell to Block 194 were not approved by the Land Office, and his sketch of Block 194 clearly demonstrates that he was mistaken as to the true position of the Pecos River, and consequently of the true positions on the ground of Block 1, I. & G. N. R. R. Co., and of Runnels County School Land Survey No. 3. In November, 1886, the then Land Commissioner in a letter to the County Surveyor of Pecos County directed that all calls for Block 1, I. & G. N. R. R. Co. Surveys be eliminated, and upon his direction all such calls, with a few exceptions which were not eliminated because of an obvious error of the clerk making the eliminations, were then in fact deleted from the field notes prepared and returned by Durrell. Upon such correction of these field notes they were approved by the Land Office and endorsed as correct and for the first time entered as correct on the official map of the county on November 19, 1886. As so approved and entered on the official map Block 194 did not adjoin Block 1, I. & G. N. R. R. Co. at any point, but appeared in the position fixed by its course and distance calls from the east line of Block Z. Along the north and northern east lines of Block 194 calls for the Runnels County School Land were also eliminated.

Block 194 as so constructed under the field notes as corrected remained on the official maps in the General Land Office until 1917 when Surveyor R. S. Dod attempted to relocate Block 194 from points on the south.

On January 8, 1916, the Land Commissioner wrote R. S. Dod, State Surveyor, advising him that the Land Office was in receipt of a letter written by Mr. L. L. Farr of San Angelo, stating that Mr. I. G. Yates (his principal) and Messrs. Monroe Brothers desired to have the land office mark out for them the west boundary line of surveys 70, 71, and 72, I. & G. N. Ry. Co. on the Pecos River, the west and south lines of Runnels County School land survey No. 3, sections 102 and 104, T. C. R. R. Co., and sections 30 to 34, Block 194, G. C. & S. F. Ry. Co., and also to establish the lines to the I. & G. N. Ry. Co. surveys on the river from sections 51 to 72 inclusive, and sec-

tions 1 and 35, T. C. Ry. Co., Block 178. The Land Commissioner directed Dod to survey the lands above described, connecting same with original corners of surrounding surveys, and to file his report with a certified sketch covering the work, and to make corrected field notes for sections 30, 32 and 34, Block 194, if found in conflict, and also any others of the above surveys if found in conflict with superior surveys. He was directed that survey No. 1, Block 178, and surveys 30 to 33, Block 194, should be located with reference to the adjacent surveys in their own blocks on their west, disregarding any calls for the I. & G. N. R. R. Co. River Surveys. From Dod's first and second reports, and graphically by his first plat, it affirmatively appears that in his first work as covered in his first report and plat he definitely located the east line of Block Z and ran eastward along the north line of Block 194 from the northwest corner of survey 5, Block 194, which is in the east line of Block Z, placing the north corners of surveys 5, 4, 38, 37, 36, 35, and 34 by the distances called for in their field notes east from the east line of Block Z, and thus located the northeast corner and the east line of Block 194 according to its accumulated field note calls from west to east. Dod's first report contains the following statement: "But according to your instructions and in accordance with facts developed on the ground, the calls in field notes of surveys in Blk 194 for connection with river surveys was neglected, and course and distance from connections on west was maintained."

On June 29, 1917, the Land Commissioner wrote Dod referring to his plat and his first report of progress, and approving his proration of the excess actually found on the ground in the east line of Z in the northings of the surveys in Block 194. This letter also contains the following instructions:

"(2) If there is excess East and West in surveys in Blocks C3 and C4 to which surveys in Blocks 178 and 194 tie, such excess should be accordingly given to surveys or tiers of surveys extending N & S through said Blocks 178 and 194."

Accordingly, Dod, having accepted as an original corner an unmarked rock mound as being the southwest corner of survey 6 in Block C-3, projected a meridian line by course and distance north from a point 1943 varas west of this position, to which he dropped back for a point for the southwest corner of survey 7, in the interior of Block C-3, to a point for the northeast corner of survey 28, Block 194, and undertook to extend the east line of Block 194 in proportion to the excess of ground over field note calls for distance found between such

position which he accepted as being an interior corner in Block C-3 and the Perry Hill Corner (southeast corner of Block Z). It is to be noted that Block C-3 does not adjoin Block Z. This excess between the southeast corner of Block Z and the position accepted by Dod as the southwest corner of section 6, Block C-3 was found by Dod to be 301 varas, which he apportioned 43 varas to each of the seven miles. Accordingly, in Block 178 and Block 194 he allowed an excess easting from Block Z over the field note calls for distance of 43 varas to a mile and located the east line of Block 194 three hundred one varas east of where he had previously located it according to his course and distance measurement along the north line of Block 194. While it is doubtful whether Dod ever actually ran the east line of Block 194 on the ground, its position as fixed by his reports and plats is easily ascertainable from Dod's reference monument which he placed as the northeast corner of survey 34, Block 194, by his running course and distance east from Block Z, and the corner in the interior of Block C-3 which Dod accepted as the original southwest corner of survey 6, Block C-3. Furthermore, this line checks exactly with the line fixed by course and distance calls in the patent to I. G. Yates which was issued on Dod's field notes. While we reject Dod's authority to so place this line, there can be no doubt as to where he intended to place it.

Dod's second report and field sketch showed that he located an east line and corner of the Yates survey at the southwest corner of survey 61, Block 1, I. & G. N. R. R. Co., as located by him, by an actual corner on the ground with bearings; thence he ran up north along the west line of said Survey 61; thence turning west, he ran out the extreme north line of the Yates Survey 308 varas and established its most northerly corner and entire west boundary line. Along this line as thus established, Dod plotted in Yates Survey of 2486 acres from known and fixed corners on the west line of the River Surveys. The field note calls for course and distance in the Yates patent comprise 2486 acres, the exact amount of land purchased and paid for by him.

With the foregoing statement as to the manner and time of the various surveys, the contentions of the various parties to this suit can be better understood.

The position of Fred Turner, Jr., is that Block 194, G. C. & S. F. Ry. Co., is correctly located according to its course and distance calls from Block Z on the west, disregarding all calls for adjoinder, except with the east line of Block Z, and that the

attempted allowance of excesses as prorated by Dod and the Land Commissioner was without authority, and therefore ineffective as against course and distance calls in the original field notes. He further contends that the Ira G. Yates Survey is correctly located where Dod placed it according to his sketch and the course and distance calls from Block 1, I. & G. N. R. R. Survey. If these contentions are sustained the vacancy alleged by Turner actually exists and he is entitled to have it surveyed as ordered by the trial court.

Among the defendants in error there appears to be two conflicting contentions. First, the Yates faction, made up of oil companies having holdings in the Yates survey, contend that if Block 194 is held to its course and distance calls, then the Yates Survey is extended west to include the areas in dispute by reason of the fact that the patent to Yates calls to adjoin the eastern sections of Block 194. Second, the Smith faction, made up of owners and oil companies having holdings in the eastern tier of sections of Block 194, contend that the calls in the original field notes of the eastern sections of Block 194 for the River Surveys should be given controlling effect, and those sections enlarged and extended so as to include not only the areas here in dispute, but also the area included in the Yates Survey. This contention is also supported by those defendants in error claiming under Yates in Surveys 30 and 32 in Block 194. These parties also contend they have title to the area involved here, even though Block 194 as originally surveyed did not include it, by virtue of the asserted resurvey of Block 194 by the surveyor R. S. Dod immediately prior to his location of the Ira G. Yates Survey in 1920. If any of these contentions is correct then no vacancy exists as alleged and Turner is not entitled to mandamus requiring a survey of this area.

For the purpose of a clearer understanding of the various contentions, we attach hereto three plats, numbered 1, 2, and 3. with the explanations thereon.

MAP NO. 1.

Showing the position
of the surveys as contend-
ed for by Plaintiff in
Error Fred Turner, Jr.

The area shown in red
hatch lines is the area
found by the trial court
to be vacant unsurveyed
public free school land.

MAP No. 3. Showing the position of the surveys as contended for the Smith faction.

While the State of Texas did not appeal from the order of the trial court striking its plea of intervention from the record, there have been filed in this Court three sets of briefs by as many Attorneys General, appearing as *amici curiae*. The first brief was filed by Attorney General Claude Pollard and seeks to uphold the judgment of the District Court. The second was filed by Attorney General Robert Lee Bobbitt which is also in support of the judgment rendered by the trial court. The third brief was filed by Attorney General James V. Allred through Hon. Geo. T. Wilson, Assistant Attorney General, in which the following statement is found: "After much consideration and study it is the opinion of the Attorney General's Department that the financial interests of the State will be best served by establishing the Dod resurvey as correct and by denying the existence of the several tracts of land filed on by the Plaintiff in Error as vacant and unsurveyed school land."

The contention is made that Article 5323, Revised Statutes, under which this suit was instituted, is unconstitutional and void. Many grounds for the invalidity of this Act are urged. A similar contention, based upon similar grounds, was urged in the case of Van Camp et al. v. Gulf Production Company et al., this day decided, post 383, and which case was submitted on the same day as this case. In a well considered opinion rendered in that case, which has been adopted by the Supreme Court, Judge Critz reviews the grounds alleged in that case against the validity of this statute and holds the act to be constitutional and valid. We refer to that opinion for a full and complete discussion of the reasons and authorities for so holding.

As above stated, it is a contention of the Smith faction that all of the region of public school land lying between T. C. Ry. Co., Block Z on the west and I. & G. N. R. R. Co., Block No. 1, on the east, became segregated from the public domain and appropriated as surveyed lands by virtue of the survey of G. C. & S. F. Ry. Co., Block No. 194 as made by L. W. Durrell, surveyor of Pecos County, Texas, during the year 1883. It is further contended by these defendants in error that the Land Commissioner was without authority to break said Block 194 from said I. & G. N. R. R. Co. Block No. 1 for the purpose of inserting either the Yates strip or the proposed Turner Strip for the reason that the region in question had theretofore been appropriated and segregated from the public domain as G. C. & S. F. Ry. Co. Block 194.

■ From the sketch which Durrell returned with his field notes in January, 1884, it is obvious that he was mistaken as to the

true position of the Pecos River and of the River Surveys. His sketch shows a distant break in the river between Survey 540, Block 12 and Survey 72, Block 1, indicating that he called for the River Surveys without knowledge of their true positions. It is an elementary principle of boundary law that a supposititious call, made upon an erroneous belief as to the location of an object, will not prevail over a call for course and distance, whether the survey was actually made upon the ground or was an office survey. 7 Texas Jurisprudence, p. 171, 172; New York & T. Land Co. v. Thomason, 83 Texas, 169, 17 S. W., 920; Findlay v. State (Court Civ. App.), 238 S. W., 956; Holdsworth v. Gates, 50 Texas Civ. App., 347, 110 S. W., 537.

█ It further appears from the evidence, however, that the field notes which Durrell returned in 1884 were not approved by the Land Office until November 19, 1886, and after the calls for the River Surveys had been eliminated therefrom. On the elimination of these calls, the Land Commissioner endorsed the field notes as correct and entered them upon the official map of Pecos County, placing Block 194 in its true position according to course and distance from the east line of Block Z. It also appears from the evidence that corrected field notes have been on file in the Land Office since 1887 on both Surveys 33 and 34 and that Surveys 31 and 33 were both patented to J. S. Daugherty in 1886, with all calls for adjoinder with the river surveys eliminated. From page 2 of "Brief for Smith Appellants" filed in the Court of Civil Appeals in this case it appears that these defendants in error are the owners of the surface and mineral interests of sections 31 and 33, Block 194. These two sections having been patented in 1886 to J. S. Daugherty, under whom the Smith interests claim, under field notes which do not call for adjoinder with the River Surveys, these defendants in error are estopped to claim land east of their field note calls on the theory that prior field notes, which were never acted upon, did call for adjoinder with said River Surveys. Anderson v. Robison, 111 Texas, 402; Miller v. Yates, this day decided, post 435, and authorities there cited.

This brings us to a consideration of the effect of the work of the surveyor R. S. Dod in 1917. A resumé of Dod's work as shown from his reports of progress and plats has already been stated. At the outset, plaintiffs in error vigorously attacks the identity of the corners in the interior of Block C-3 which were accepted by Dod. On the trial of the case of Douglas Oil Co. v. State, No. 6339, known as the California case (post 377), the location of these corners was made to appear very uncertain

and difficult of identification. But assuming that these corners were fixed and definitely ascertainable original corners, we have reached the conclusion that the proration of the alleged "excess," in so far as Block 194 was concerned, was wholly without authority, and could not be given the effect of moving the lines of the surveys in Block 194 further east than the positions in which Durrell originally placed them.

The survey of L. W. Durrell of this block in 1883 was an office survey, and the first survey put in was tied to the northeast corner of Block Z. Block Z was put in by a survey on the ground and is tied down on the south by its southeast corner (Perry Hill Corner) and on the north by the northeast corner of survey No. 33, Block Z (Canyon Corner). The testimony of L. W. Durrell in his deposition, introduced in this case as against the Smith faction, was as follows:

"The platting of Block 194 was based on connections made by me on the ground West and North of Block Z and upon the certain location of Block Z. * * * Prior to location of Block 194, G. C. & S. F. Ry. Co. Surveys of Pecos County, Texas, in May, 1883, I had not run out on the ground any survey lines, and had not found any original corners on the ground in Block C-3 or in Block A-2. I did not locate either of these Blocks of surveys from any points in either Block C-3 or Block A-2, and I had no knowledge of their actual positions on the ground or as to their actual lines or corners."

Independent of this testimony, however, the conclusion is inescapable from the sketch and field notes left by the surveyor that his survey of Block 194 was made without any reference whatever to the position, lines or corners in Blocks A-2 and C-3. He started at the certain position of Block Z and platted course and distance eastward, and called for adjoinder with the surrounding surveys on the north, east and south. His calls for adjoinder with the surrounding surveys on the north and east were eliminated by the Land Commissioner because the documents before him showed conclusively that Durrell was mistaken as to the true location of those surveys. As to the surveys in Block 178 for which Durrell called to adjoin on the south, his own testimony in this case, as well as his sketch and field notes, demonstrate that he did not know their true positions, but called for them merely by conjecture. As before stated the rule is well established that a call for adjoinder with an unmarked line made upon misapprehension, mistake or conjecture, will be disregarded and the junior survey located according to course and distance from the nearest established

corners, and this is true regardless of whether the entire junior survey was actually run out on the ground, or was wholly or in part an office survey. (See authorities cited supra).

■ But, it is contended that Block 178 is capable of definite ascertainment and the calls to adjoin must therefore control. The only method by which Block 178 is capable of being constructed is by course and distance from the points in other surveys. Consequently, the calls in surveys in Block 194 for course and distance proceeding from west to east across the block from the established east line of Block Z cannot be made subordinate to an unmarked prairie line, which cannot itself be ascertained except by running the boundaries of another survey according to course and distance. Gerald v. Freeman, 68 Texas, 201, 4 S. W., 256; Johnson v. Archibald, 78 Texas, 96, 14 S. W., 266; Polk County v. Stevens, 143 S. W., 204.

■ From the above it appears that in locating Block 194 under Durrell's survey and field notes, it is to be constructed from the east line of Block Z eastward by course and distance. Since Block Z was a survey on the ground and there is found to be an excess over its course and distance calls between the north and south lines as fixed by original monuments on the ground, this excess was properly prorated among the several tiers of sections within Block Z. Welder v. Carroll, 29 Texas, 318; Sellers v. Reed, 46 Texas, 377; Ware v. McQuinn, 7 Texas Civ. App., 107, 26 S. W., 126; Knippa v. Umlang, 27 S. W., 915; Austin v. Espuela Land, etc., Co., 107 S. W., 1138; Johnson v. Knippa, 127 S. W., 905; Booth v. Clark, 59 Wash., 229, 109 Pac., 805, Ann. Cas., 1912A, p. 1273 (See note pp. 1273-1277).

■ And this same excess north and south must be brought eastward into Block 194, because the western tier of sections in Block 194 called to adjoin with the lines and corners of the eastern tier of sections in Block Z. It is strenuously argued that this same principle of prorating the excess applies east and west within Block 194. However, the alleged excess is not found between actual marked lines and corners within Block 194, as is the case with Block Z, but is found between a corner in Block Z and another corner in Block C-3, two independent blocks of surveys which are not contiguous at any point, and by projection by course and distance north through Block 178, another independent block of surveys, into Block 194. If Dod's purpose in this was to resurvey Block 194 as surveyed by Durrell, this was obviously erroneous. There is no principle of law which would permit the east line of Block 194 to be located by

course and distance from a point two independent blocks of surveys away, and of which points the original surveyor had no knowledge whatever, when it can be located from fixed points in its own west line by course and distance. If Dod's purpose was to relocate the lines within Block 194, including the east line of the Block, at different places from where Durrell placed such lines, he was clearly exceeding his authority under the decision of this Court in the case of Post v. State, 106 Texas, 468, 169 S. W., 407, where Judge Brown on strikingly similar facts said: "The Commissioner had the power to cause Post's land to be resurveyed, that is, run out according to the field notes of the original survey; but neither the Commissioner nor the surveyor had authority to so change the said field notes as to embrace lands not included in the original survey."

The location of Block 194 being definitely fixed by its course and distance calls east from Block Z, the question of whether the alleged vacancy exists further depends upon the soundness of the contentions of the Yates faction that the Patent to Ira G. Yates of his 2486 acres strip included the alleged vacancy or that Yates had prior right to purchase the strip, if it existed, by virtue of his application to have surveyed all the vacant land between the River Surveys and Block 194.

■ The contention that Ira G. Yates 2486 acre survey included the area in dispute is based upon the calls in the patent to this survey for the east lines of surveys 33, 32, 31 and 30, Block 194. In determining the true location of this survey, the duty of the court is to follow the steps of the surveyor if they can be followed. Surveyor R. S. Dod under instructions of the Land Commissioner attempted to locate the east line of Block 194 by course and distance from Block Z, and marked his location of this line by his reference monuments at his location of the northeast corner of Survey 54, marked "NE 34." Under later instructions from the Land Office he changed this locattion of the east line of Block 194 to a position 301 varas east of his first location. While it is claimed that Dod never actually ran out on the ground the east line of sections 33, 32, 31 and 30, Block 194, yet his location of this line is definitely fixed by his calls from his reference monuments on the north and the rock mound, which he accepted as the original southwest corner of survey 6 in Block C-3. Dod was not mistaken as to the position of this east line of Block 194. He knew if it was to be located by course and distance from Block Z it was at one definite place, which he attempted to locate. He also knew if this east line of Block 194 was to be located from points in Block C-3 on the

south, it was located at another definite place, that is, 301 varas east of his attempted location by course and distance. He asked the Land Commissioner which was correct and upon being told the latter was correct, he made the west line of the Yates Survey conform to this location of the east line of Block 194. . The contention that Dod would have gone somewhere else had he known the true east line of Block 194 was in another place is without merit. The opinion of the Court of Civil Appeals seems to hold that even if the surveyor did not include all the area between Block 1 and Block 194 in the field notes to the Yates Survey yet since it was the intention of the Land Commissioner to sell and of Yates to buy all such area, then it should all be considered as within Yates' field notes. We are unable to gree with this holding. The inquiry is not where the surveyor would have placed the west line of the Yates Survey if different facts had obtained, but the inquiry is where did he actually place this west line. This was decided to be the true inquiry by the Supreme Court in the case of Blackwell v. Coleman County, 94 Texas, 216, in which Associate Justice Williams states the following rule:

"The question seems to have been whether or not the calls for course and distance or those for lines of older surveys should prevail. Upon this question, we are of the opinion that the testimony of the surveyor stating his intention in making the survey was not admissible. In determining the location of the land in such cases, the courts seek to ascertain the true intention of the parties concerned in the survey; but the intention referred to is not that which exists only in the mind of the surveyor. It is defined as that which may 'be gathered from the language of the grant,' or as 'the intention apparent on the face of the grant' (Hubert v. Bartlett, 9 Texas, 104), or 'the legal meaning of the language of the patent, when considered in the light shed upon it by the acts constituting the survey.' Robertson v. Mosson, 26 Texas, 251; Robinson v. Doss, 53 Texas, 507; Brown v. Bedinger, 72 Texas, 247; Richardson v. Powell, 83 Texas, 591. *When reference is made in the decisions to the intention of the surveyor, the purpose deduced from what he did in making the survey and description of the land is meant, and not one which has not found expression in his acts.* (Italics ours). Grants are issued by the State and accepted by the grantees upon the acts done by the surveyor in identifying and describing the lands, and the rights of both are to be determined by the legal effect of those acts and not by intentions which can not be deduced from a construction of the descrip-

tions in the grants, with the aid of the facts constituting the surveys upon which they are based. Hence, if the intention of the surveyor appears from his field notes and his acts done in making the survey, his evidence to prove his intention is superfluous, while if it does not so appear, it can not control or affect the grant."

■ The field notes and sketch of the Yates survey prepared by the surveyor show clearly where he placed the west line of the survey. When we look to his declarations in his reports of progress, it becomes more clear than ever the exact position at which this line was placed. Not only does the position at which he placed it not admit of any doubt, but these reports show the reasons which caused him to so place it. Furthermore, the field notes calls for course and distance in the Yates Survey place the west line of this survey in the exact position at which Dod located the east line of Block 194 under instructions of the Land Commissioner. The computation of acreage upon these field notes calls shows there to be 2486 acres, the exact amount applied for and purchased by Yates. Thus, it is clear that when Dod called for the east lines of surveys 33, 32, 31 and 30, in Block 194, he was calling for those lines as he had erroneously fixed them. Under this construction, which is certainly what the surveyor actually did, all the calls in the Yates patent are harmonized, and as stated by Associate Justice Greenwood in the case if Wilson v. Giraud, 111 Texas, 253, 264, 231 S. W., 1074: "The construction is reasonable, and since it harmonizes all the terms of the patent it must be adopted under the general rule for the interpretation of written instruments."

At the time the Yates Strip was surveyed by Dod, the true east line of Block 194 had never been marked on the ground. If it were conceded that the calls for the east line of Block 194 were calls for that line without knowledge of its true position, then we have exactly the same situation as the calls in Durrell's original field notes for the unmarked west line of the River Surveys. Such a call would be a "supposititious call, without regard for precision" and must yield to the more certain call for course and distance. Under either theory the west line of the Yates Survey is fixed where its field notes call for it, according to course and distance.

The State offered to sell and Yates made application to purchase the specific land included in the field notes and sketch prepared by Captain Dod, and comprising 2486 acres. Yates received and accepted a patent based upon these field notes and sketch and calling for 2486 acres. That he did not claim any

land not described in this patent is conclusively shown by his conduct and testimony. Yates did not appeal from the judgment of the trial court. The record shows the position of several oil wells. Some are located near the east line of the alleged vacant area involved here and some near the west line of the land conveyed to Yates, described in the patent. If Yates acquired, in addition to the 2486 acres described in the patent, the 560 acres involved here, all of the wells near the dividing line above described would be upon his land. We quote briefly from Mr. Yates' testimony, as follows:

"Counsel for plaintiff then pointed out to the witness on the Lea map, the Smith-Taylor wells Nos. 1 and 3, and the two wells in the A lease, and the witness in further response, then said:

"I am not claiming that well (Smith-Taylor No. 1) and don't claim anything that does not belong to me. I have not claimed the Smith-Taylor Well No. 3. There are two wells, right beside the two you have asked me about, on the A lease. * * * When you get over to No. 1 and No. 3 Smith-Taylor, I haven't claimed them."

L. L. Farr, Yates' manager, who acted for Yates in the acquisition of the Yates Survey, testified:

"As owner of the I. G. Yates Survey, that zig-zag survey, it is a fact that he (Yates) never claimed any west of where its course and distance west line runs until after this controversy arose."

The testimony also shows that Yates has never claimed nor exercised any ownership by reason of his patent to the land involved here. He has permitted others to execute mineral leases on this alleged vacant land and oil wells have been drilled thereon and have been producing great quantities of oil for several years. Yates also drilled oil wells on his land described in the patent just east of his western line. This record does. show, however, that after the filing of this suit by Turner, and about the time it was ready to be tried, Yates offered to surrender his patent and asked for the land to be resurveyed and that when resurveyed he would pay for same.

■ As to the further contention that Mr. Yates has a prior right to purchase the vacant land, if any exists, between Block 1 on the east and Block 194 on the west, suffice it to say that the case of Miller v. Yates, this day decided (post 435), recommits this Court to the rule that after a patent has been accepted to certain land, the application is merged in the patent and the patentee and those claiming under him are estopped to claim

any land lying outside the bounds of that patent by virtue of the fact that the first or original application included other lands.

■ When Block 194 is located by course and distance west to east from Block Z and the Ira G. Yates Survey is located by its course and distance calls from fixed points in its east line, it appears there is left a vacancy between these surveys, constituting approximately 560 acres, being the tracts of land found by the trial court to be vacant, unsurveyed Public Free School Land.

We summarize the case as follows:

L. W. Durrell who located Block 194, G. C. & S. F. Ry. Co., knew the location of Block Z which is well established on the ground as a block of surveys. He located Block 194 on three sides of Block Z—east, north and west—almost surrounding the block. He began his work at the northeast corner of Block Z and proceeded east by course and distance and, after reaching what he thought were the River Surveys on the east, he platted back and placed several sections of Block 194 on the north and west sides of Block Z. He made it apparent on his map that he did not know the location of the west lines of the River Surveys, though in the east sections of Block 194 he called for certain corners in the River Surveys. The west line of the River Surveys had never been located on the ground. That he was mistaken in these corners is evident and also his call for the Runnels County School Land on the north was evidently through mistake. As we read the record the Land Commissioner did not approve the calls for the River Surveys and the calls for the Runnels County School Land and before any corrected field notes of any of the surveys were accepted by the Land Office the Commissioner had deleted Durrell's calls for said River Surveys. On the south of Block 194 Durrell called for certain corners of surveys in Block 178. Block 178 was itself an office survey and the north line thereof wholly unestablished and unlocated. In fact, the whole of Block 178 has never been definitely located on the ground and its location appears to be more or less uncertain.

In 1917 when Captain Dod, state surveyor, undertook to locate the surveys in Block 194, he began by first locating definitely the east line of Block Z and surveyed east according to course and distance in order to locate the east line of Block 194. However, upon the instructions of the Land Commissioner, he discontinued locating Block 194 by course and distance from Block Z and undertook to locate it from certain

corners in Block C-3. He ran a meridian up through Block 178 in order to allocate the excess in the southern blocks to the surveys in Block 194. It is contended with much support in the evidence that the corners of the surveys in Block C-3 were uncertain and undetermined, and it is undisputed that in its north line no original corners are to be found. With the situation south of Block 194 so uncertain and difficult of determination, we have held that we would not reject the more certain calls for course and distance as made by Durrell in his original survey. In other words, we are giving effect to the more certain calls and rejecting the uncertain ones.

The attempt of the Land Commissioner and Captain Dod was to intentionally and purposely put excess acreage into each of the sections of Block 194 in proportion to the excess in the blocks south of said Block 194. We are holding that it is not the policy of the State to create excesses in surveys. In fact, the State of Texas has spent large sums of money trying to discover and reclaim excesses in the surveys all over Texas and the Legislature has enacted statutes for that purpose. This Court has held in the case of Post v. State, 106 Texas, 468, 169 S. W., 407, that in resurveying a tract of land the surveyor must follow the survey as made originally by the locating surveyor and is not authorized to add acreage thereto. The Land Commissioner had no authority or right to instruct surveyor Dod to purposely and intentionally increase the acreage in the various blocks of 194 because there appeared to be from calculations excess in the surveys of two or more of the blocks to the south.

By giving controlling effect to the survey as mapped out and field notes returned by the locating surveyor, Durrell, Block 194 is easily located by its course and distance calls.

The I. G. Yates Survey, S. F. 12341, is located exactly where the locating surveyor placed it. There was no mistake of fact on the part of surveyor Dod in placing the Yates Survey or on the part of Mr. Yates *in his application to purchase this identical land* according to Dod's survey and in accepting his patent thereto. The fact that he originally applied to have surveyed all the vacant land between the River Surveys on the east and Block 194 on the west is not controlling as was held by the Court of Civil Appeals in this case, but rather his specific intention as shown by the grant, the acts of the surveyor, his application to purchase and his patent, with full knowledge of the facts as they existed. These principles of land law are well

established by the decisions of this Court. Therefore, the judgment of the trial court declaring these tracts to be vacant and ordering them surveyed was correct.

The judgment of the Court of Civil Appeals is reversed and that of the District Court affirmed.

MR. CHIEF JUSTICE CURETON, dissenting.

In so far as the opinions of the Majority of the Court in the above cases hold that there exists a vacancy between the west line of the Yates survey and the east line of Block 194, and that the surveys in Block 194 should be construed eastward by course and distance alone, without giving effect to calls for adjoinder on the south with Block 178, I respectfully dissent.

I agree with the conclusion of the Court of Civil Appeals in the case of Smith v. Turner, 13 S. W. (2d) 152, that no vacancy exists, and am of the opinion that the judgment of that Court in reversing the judgment of the District Court, and rendering a decree to the effect that the land claimed by Turner was not vacant, unsurveyed land, should be affirmed.

I am also of the opinion that the District Court in the Whiteside case (No. 6338) used the correct method in determining the eastern boundary of the sections in Block 194, and the questions certified in both the Whiteside and California (No. 6339) Cases, which are copied in the majority opinions, should be answered in a manner consistent with that conclusion, as follows:

1. The answer to the First Certified Question in both the Whiteside and California Cases should be, that the *"Second Method"* described in the Certificate (quoted in the Majority Opinions) was and is the proper method to be applied in establishing the boundary lines of the involved surveys;

2. The Second Certified Question should be answered in the affirmative;

3. Both inquiries embraced in the Third Certified Question should be answered in the affirmative;

4. In view of the foregoing an answer to the Fourth Certified Question is unnecessary;

My reasons for the above conclusions will be stated in formal dissenting opinions which I will file as soon as their preparation may be completed.